**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MELISSA JAYLENE MERCADO,

                    Plaintiff,

          -against-

MOUNT SINAI BETH ISRAEL, MOUNT SINAI
HEALTH SYSTEM, INC., ARTUR YADGAROV,
IRINA AGREST, DIELLA MRNACI and KATHERINE
QUINONES-NATAL,

                    Defendants.

Docket No.:

**COMPLAINT**
**AND JURY TRIAL DEMAND**

---

Plaintiff Melissa Jaylene Mercado, by her attorneys, Shegerian & Associates, alleges, for her Complaint against Defendants Mount Sinai Beth Israel, Mount Sinai Health System, Inc., Artur Yadgarov, Irina Agrest, Diella Mrnaci and Katherine Quinones-Natal, upon information and belief, and at all times relevant, as follows:

**PRELIMINARY STATEMENT**

Defendants Mount Sinai Beth Israel and Mount Sinai Health System, Inc. (collectively referred to herein as "Mount Sinai") permitted Defendant Artur Yadgarov ("Yadgarov"), Plaintiff Melissa Jaylene Mercado ("Mercado")'s direct supervisor, Plaintiff's interim supervisor appointed after Defendant Yadgarov resigned, Defendant Irina Agrest ("Agrest"), Defendant Diella Mrnaci ("Mrnaci"), Director of Ambulatory Department of Radiology and Defendant Katherine Quinones-Natal ("Natal"), Mammography Technologist of the Radiology Department, to intentionally discriminate against Plaintiff as a lesbian  PET/CT Technologist and retaliate against Plaintiff for complaints of discrimination, disparate treatment and harassment resulting in a hostile work environment, aiding, abetting, inciting, compelling and coercing sexual

1

orientation forbidden acts and complaints of New York Labor Law and Public Health Law violations. After complaining of unfair treatment based on her sexual orientation, Defendants retaliated by assigning Plaintiff more patients per shift than heterosexual Technologists, prevented her from taking lunch breaks, denied her vacation requests, deprived her of vacation time, routinely viewed security videos of Plaintiff clocking in and out of work seeking to discipline her for tardiness, pursued her transfer from Defendant Mount Sinai's Manhattan location to its Queens location, challenged her seniority status and misplaced her request for vacation.

Plaintiff complained to Defendant Mount Sinai of Defendant Natal's inappropriate hostility towards her after becoming aware of Plaintiff's sexual orientation, being overscheduled up to seven patients in one day, preventing her from taking lunch breaks and routinely requiring her to work beyond the end of her shift, being deprived of wages owed during a mandatory quarantine imposed by the City of New York's Employee Health Services ("EHS") due to COVID-19 exposure during a shift, being delegated more administrative tasks than other heterosexual PET/CT Technologists and Defendant Mount Sinai ignoring its duty to protect Plaintiff Mercado from disparate treatment based on her sexual orientation. Defendant Mount Sinai was on notice of Plaintiff's complaints against the pattern of discriminatory practices and retaliatory conduct she suffered after she notified Defendant Mrnaci various times of the unfair treatment as well as to her Union, Local 1199 SEIU representative, Elaine Daley ("Daley").

Additionally, Plaintiff Mercado complained of Defendant Yadgarov's mandate directing her to improperly practice nuclear medicine in violation of the State of New York Department of Health's ("DOH") Article 35 and Public Health Law §12-b, which jeopardized her license as a PET/CT Technologist.

## NATURE OF THE ACTION

1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e to 2000e-17 ("Title VII"); the New York State Human Rights Law, N.Y. Exec. §296, *et seq.* ("NYHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code §8-101, *et seq.* ("NYCHRL"), to remedy discrimination based upon sexual orientation, disparate treatment, a hostile work environment, retaliation, New York Labor Law ("NYLL") §215 for retaliation after Plaintiff complained about violations of Public Health Law §12-b as well as Article 35 and other adverse action perpetrated by Defendants. This action is also brought under Public Health Law Plaintiff Melissa Jaylene Mercado seeks monetary damages to remedy her claims against Defendants.

2.      Plaintiff Melissa Jaylene Mercado ("Mercado"), a lesbian  PET/CT Technologist, employed by Defendant Mount Sinai in its Radiology Department from May 16, 2016 to March 29, 2021, complains that Defendants unlawfully discriminated against her based on her sexual orientation, treated her less favorably in her terms and conditions of employment, including without limitation, Defendant Yadgarov's overscheduling Plaintiff with up to seven patients in one day preventing her from taking lunch breaks and requiring her to work beyond the end of her shift, improperly withholding wages owed during a mandatory quarantine imposed by the City of New York's EHS due to COVID-19 exposure during a shift, delegating Plaintiff more administrative tasks than other heterosexual Technologists, retaliating against her after lodging complaints concerning harassment and unfair treatment, condoning Defendant Natal's hostility and retaliation towards Plaintiff, consistently watching her clock in and out searching for an infraction to discipline her, seeking her transfer to the Queens location causing her unnecessary commuting

3

hardship, Defendant Yadgarov's mandating Plaintiff practice nuclear medicine despite being unlicensed in violation of the New York Public Health Law §12-b as well as Article 35, refusing to recognize her seniority, depriving her of accrued vacation time, denying her vacation requests and ignoring Defendants' duty to protect Plaintiff Mercado from disparate treatment based on her sexual orientation.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)(3). This Court has supplemental jurisdiction over Plaintiff Mercado's New York State and New York City's statutory causes of action prohibiting discrimination pursuant to 28 U.S.C. §1367(a).

4.      Plaintiff Mercado asserts supplemental State and City law claims pursuant to the New York State Constitution, New York Executive Law §296, *et seq.* and New York City Administrative Code §8-101, *et seq.*

5.      Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff Mercado's claims occurred in this District, and application and enforcement of Defendant Mount Sinai's equal employment opportunity ("EEO") policies, affecting the hiring, promotion, work assignments, discipline and termination of its employees, may be found in this District.

6.      All conditions precedent to jurisdiction have occurred or been complied with including and in particular:

        a.   On September 8, 2021, Plaintiff Mercado filed a Charge of Discrimination ("the

Charge dated September 8, 2021") based on discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which Plaintiff complains in this action.

b.   A Dismissal and Notice of Rights was issued by the EEOC on September 10, 2021. Plaintiff Mercado duly filed her Complaint within 90 days of receipt of the Dismissal and Notice of Rights. See attached hereto as **Exhibit A**, a copy of the Charge dated September 8, 2021 and Dismissal and Notice of Rights dated September 10, 2021.

## PARTIES

7.      Plaintiff Mercado is a lesbian  and citizen of the United States of America who, at all times relevant, resides in Bronx County, State of New York.

8.      Plaintiff Mercado has been continuously employed by Defendant Mount Sinai as a PET/CT Technologist at Defendant's 325 W. 15th Street, New York, New York location from on or about May 16, 2016 until March 29, 2021.

9.      Upon information and belief, Defendant Mount Sinai Beth Israel is a domestic Not-For-Profit corporation duly organized and existing under and by virtue of the laws of the State of New York where it is incorporated with its principal place of business at 281 1st Avenue, New York, New York 10003.

10.     Upon information and belief, at all relevant times, Defendant Mount Sinai Beth Israel is an employer as that term is used in Title VII, the NYHRL §296, *et seq.,* and NYCHRL § 8-101, *et seq.*

11.     Upon information and belief, at all relevant times, Defendant Mount Sinai Beth Israel is an employer as that term is used under the NYCHRL, because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

5

12.     Upon information and belief, at all relevant times, Defendant Mount Sinai Beth Israel is an employer as that term is used under the NYCHRL 8-102(5), because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

13.     Upon information and belief, Defendant Mount Sinai Health System, Inc. is a domestic Not-For-Profit corporation duly organized and existing under and by virtue of the laws of the State of New York where it is incorporated with its principal place of business at One Gustav L. Levy Place, New York, New York 10029.

14.     Upon information and belief, at all relevant times, Defendant Mount Sinai Health System, Inc. is an employer as that term is used in Title VII, the NYHRL §296, *et seq.,* and NYCHRL §8-101, *et seq.*

15.     Upon information and belief, at all relevant times, Defendant Mount Sinai Health System, Inc. is an employer as that term is used under the NYCHRL, because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

16.     Upon information and belief, at all relevant times, Defendant Mount Sinai Health System, Inc. is an employer as that term is used under the NYCHRL 8-102(5), because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

17.     Upon information and belief, Defendant Yadgarov was at all relevant times one of Plaintiff Mercado's direct supervisor as Associate Administrator of Radiology Department of Defendant Mount Sinai located at the Mount Sinai Chelsea Outpatient Radiology at 325 West 15th Street, New York, New York.

18.     Upon information and belief, Defendant Yadgarov, as an Associate Administrator of the outpatient facility employed by Defendant Mount Sinai, in his individual and official capacity, acted as an agent, employee, licensee, servant and manager for Defendant Mount Sinai.

6

19.	Upon information and belief, Defendant Mount Sinai owned, managed, controlled, maintained, employed and/or supervised Defendant Yadgarov, individually and in his official capacity, as an Associate Administrator.

20.	Upon information and belief, at all relevant times, Defendant Yadgarov is an employer as that term is used in the NYHRL §296, *et seq.,* and NYCHRL §8-101, *et seq.*

21.	Upon information and belief, at all relevant times, Defendant Yadgarov is an employer as that term is used in the NYHRL §296, *et seq.,* and NYCHRL §8-101, *et seq.* because he has four (4) or more employees in his employ and conducts business in the State and City of New York.

22.	Upon information and belief, Defendant Agrest was at all relevant times one of Plaintiff Mercado's direct supervisor as Associate Administrator of Radiology Department of Defendant Mount Sinai located at the Mount Sinai Chelsea Outpatient Radiology at 325 West 15th Street, New York, New York.

23.	Upon information and belief, Defendant Agrest, as an Associate Administrator of the Mount Sinai Chelsea Outpatient Radiology facility employed by Defendant Mount Sinai, in her individual and official capacity, acted as an agent, employee, licensee, servant and manager for Defendant Mount Sinai.

24.	Upon information and belief, Defendant Mount Sinai owned, managed, controlled, maintained, employed and/or supervised Defendant Agrest, individually and in her official capacity, as an Associate Administrator.

25.	Upon information and belief, at all relevant times, Defendant Agrest is an employer as that term is used in the NYHRL §296, *et seq*., and NYCHRL §8-101, *et seq.*

26.	Upon information and belief, at all relevant times, Defendant Agrest is an employer

7

as that term is used in the NYHRL §296, *et seq*., and NYCHRL §8-101, *et seq.* because she has four (4) or more employees in her employ and conducts business in the State and City of New York.

27.    Upon information and belief, Defendant Mrnaci was at all relevant times one of Plaintiff Mercado's supervisors as Director of Ambulatory Department of Radiology for Defendant Mount Sinai located at the Mount Sinai Chelsea Outpatient Radiology at 325 West 15th Street, New York, New York.

28.    Upon information and belief, Defendant Mrnaci, as the Director in the Radiology Department for the Chelsea Outpatient facility employed by Defendant Mount Sinai, in her individual and official capacity, acted as an agent, employee, licensee, servant and manager for Defendant Mount Sinai.

29.    Upon information and belief, Defendant Mount Sinai owned, managed, controlled, maintained, employed and/or supervised Defendant Mrnaci, individually and in her official capacity, as a Director in the Radiology Department.

30.    Upon information and belief, at all relevant times, Defendant Mrnaci is an employer as that term is used in the NYHRL §296, *et seq*., and NYCHRL §8-101, *et seq.*

31.    Upon information and belief, at all relevant times, Defendant Mrnaci is an employer as that term is used in the NYHRL §296, *et seq.,* and NYCHRL §8-101, *et seq*. because she has four (4) or more employees in her employ and conducts business in the State and City of New York.

32.    Upon information and belief, Defendant Natal was at all relevant times one of

Plaintiff Mercado's colleagues employed as a Mammography Technologist in the Radiology Department of Defendant Mount Sinai located at Mount Sinai Chelsea Outpatient Radiology at 325 West 15th Street, New York, New York.

33.    Upon information and belief, Defendant Natal, as a Technologist at the Chelsea Outpatient Radiology facility was employed by Defendant Mount Sinai, in her individual and official capacity, acted as an agent, employee, licensee, servant and manager for Defendant Mount Sinai.

34.    Upon information and belief, Defendant Mount Sinai owned, managed, controlled, maintained, employed and/or supervised Defendant Natal, individually and in her official capacity, as a Mammography Technologist in the Radiology Department.

35.    Upon information and belief, at all relevant times, Defendant Mount Sinai is Defendant Natal's employer as that term is used in the NYHRL §296, *et seq*., and NYCHRL §8-101*, et seq.*

36.    Upon information and belief, at all relevant times, Defendant Mount Sinai is Defendant Natal's employer as that term is used in the NYHRL §296, *et seq.,* and NYCHRL §8-101, *et seq.* because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

## STATEMENT OF FACTS

**I.    PLAINTIFF MERCADO'S EMPLOYMENT HISTORY AND DEFENDANTS' DISCRIMINATORY PRACTICES AND RETALIATION**

37.    On May 16, 2016, Plaintiff Mercado became employed by Defendant Mount Sinai as a full-time PET/CT Technologist at the Chelsea Outpatient Radiology location in Manhattan, New York. Her duties involved ordering radiopharmaceuticals, daily, weekly and monthly Quality Control, reviewing physicians' prescriptions, retrieving patients from the waiting room, changing

the patients if necessary, reviewing the questionnaires, explaining the specific procedure and answering any patient questions, administering IVs, testing blood sugar, injecting radiopharmaceuticals and performing diagnostic PET/CT imaging.

38. Plaintiff Mercado was interviewed and hired by Administrators, Sergio Guilbaud and Naomi Saleh and reported to them along with her direct supervisor, Administrator, Mary Ibrahim ("Ibrahim"). Ibrahim was Plaintiff's direct supervisor for approximately one year, during which time they worked well together. In fact, Ibrahim urged Plaintiff to seek a "leadership" role in the Radiology Department.

39. During Plaintiff's employment, Defendant Mrnaci informed Plaintiff that Defendant Mount Sinai planned on installing a new MRI machine and approached her about fulfilling an Associate Administrator of Radiology role overseeing approximately 15 Technicians. Plaintiff stated she was interested in such a managerial position.

40. During and throughout Plaintiff Mercado's employment, Plaintiff excelled in her role and performed all of her duties in a satisfactory and highly competent manner.

41. In or about August 2016, Plaintiff Mercado mentioned her same sex marriage to her wife to her superiors at the time revealing her wife was undergoing Open-Heart Surgery.

42. On or about May 22, 2018, Defendant Natal became employed by Defendant Mount Sinai at the Chelsea Outpatient Radiology facility to work in the Mammography department.

43. Soon after Defendant Natal became employed at the Chelsea location in May 2018 and became aware of Plaintiff Mercado's sexual orientation as a lesbian, Plaintiff began receiving hostile treatment from Defendant Natal, which directly interfered with her

ability to perform her job duties as a PET/CT Technologist. Defendant Natal primarily spent her shift working on the Mammography side of the Radiology department where Plaintiff worked.

44. In or about May 2018, Plaintiff Mercado began experiencing harassment due to her sexual orientation. For example, each occasion Plaintiff communicated with her colleague Patrique Larco-Brown, Defendant Mount Sinai Mammography Technologist, Nelli Knom (Knom"), asked if Ultrasound Technologist, Patrique Larco-Brown ("Larco-Brown") and Plaintiff were girlfriends dating each other.

45. A couple of days after Knom began asking Plaintiff Mercado if she was engaging in a same sex relationship with Larco-Brown, Defendant Mrnaci directed Plaintiff she was no longer allowed to be inside the Mammography department. Defendant Mrnaci told Plaintiff she did not want her in the room with Lacron-Brown alone with the door closed, embarrassing Plaintiff.

46. Shortly after Plaintiff Mercado's conversation with Defendant Mrnaci, Defendant Mrnaci actively made efforts to keep Larco-Brown and Plaintiff separated. For example, on one occasion, Plaintiff was in a room with Larco-Brown, and as Defendant Natal walked by, she pointed directly at them and began whispering to her superior, Jamin Gomez, Mammography Supervisor.

47. On or about May 23, 2018, Plaintiff Mercado remarked in the Technologist break area that it smelled like a deceased rodent. Defendant Natal immediately confronted Plaintiff assuming this remark was a personal slight towards her. Plaintiff attempted to explain it did not involve her at all and eventually walked away to diffuse the situation. Shortly thereafter that exchange, Plaintiff's coworker, Afiya Benn approached Plaintiff and stated it did in fact smell like a rodent in that area.

11

48.    At approximately 2:00 p.m. that same day, Defendant Natal was instructed to apologize to Plaintiff for her behavior earlier in the break room with union delegate, Nicole Dubose present.

49.    On or about May 29, 2018, Plaintiff Mercado sent an email to Defendant Mrnaci to notify her of the incident that transpired with Defendant Natal. In response, Defendant Mrnaci met with Plaintiff in her office and stated she would have a conversation with Defendant Natal.

50.    On or about August 6, 2018, Defendant Natal harassed Plaintiff Mercado concerning the administering of an IV to a patient. Plaintiff was working with one of her patients alongside Enrico Dungca ("Dungca"), CT Technologist who was present to witness Defendant Natal confront Plaintiff asking her if she is even capable of helping Dungca with an IV. Plaintiff responded, "Yes, I am able to help when I can. Why?" Defendant responded, "Nothing, that's all I wanted to know...", turned around and walked away. Dungca asked, "What was that about?" noticing the hostility.

51.    On or about August 8, 2018 at approximately 11:00 a.m., Plaintiff Mercado attempted to walk by Defendant Natal in the hallway, and as Plaintiff passed by, Defendant charged towards Plaintiff allowing her no room to pass forcing Plaintiff to push herself up against the wall to avoid physical contact with Defendant.

52.    On or about August 10, 2018, Plaintiff Mercado consulted with Union Organizer, Anna Ortiz ("Ortiz") about how to lodge a complaint to Defendant Mount Sinai concerning Defendant Natal's hostile conduct towards her since May 2018. Plaintiff mentioned Defendant Natal consistently invaded her personal space, came close to physically assaulting her on more than one occasion and was making it difficult for Plaintiff to do her job on a daily basis.

53.    On or about September 4, 2018, Defendant Natal insinuated Plaintiff Mercado

12

failed to order an injection for a breast-imaging patient, but in fact, Dr. Lisa Abramson confirmed it was Defendant Natal who actually made the mistake.

54. On or about September 5, 2018, Defendant Natal walked towards Plaintiff Mercado and made physical contact with her shoulder, knocking Plaintiff's paperwork she was carrying completely out of her hands. Defendant kept on walking. Approximately ten minutes later, Defendant walked towards Plaintiff clenching her fists twice while they were standing in the Mammography Technologist area. Larco-Brown was a witness to Defendant's inappropriate and aggressive behavior targeting Plaintiff. Larco-Brown had been experiencing hostility and harassment from Defendant Natal as well.

55. On or about September 6, 2018, Plaintiff Mercado informed Defendant Mrnaci about the Defendant Natal's most recent aggressive conduct towards her. Defendant Mrnaci completely ignored Plaintiff's complaints and failed to properly address them.

56. On or about September 6, 2018, Plaintiff Mercado met with Saseesya Brown ("Brown"), Union Delegate and detailed the recent events involving Defendant Natal's harassment. In response, Brown recommended scheduling a union mediation, advised Plaintiff to call the police to report Defendant Natal and send Christopher Berner ("Berner"), Senior Vice President of Human Resources, an email detailing her harassment complaint against Defendant.

57. On or about September 7, 2018 at 10:00 a.m., Plaintiff Mercado sent an email detailing her complaints against Defendant Natal to Berner and requested the Union investigate the matter. At approximately 11:43 a.m., Berner responded stating Tom Spina ("Spina"), Director of Labor Relations of Union SEIU 1099, would follow up with Plaintiff and include Defendant Mount Sinai's Radiology Department that Monday.

58. On or about September 7, 2018, after Plaintiff Mercado lodged her complaint to

Berner, Brown directed Plaintiff to meet alone with Defendant Mrnaci revealing Defendant was very upset Plaintiff complained to Berner. During that meeting, Defendant questioned Plaintiff as to why she made the complaint. Plaintiff responded that Defendant Mount Sinai failed to protect her from discrimination and retaliation from Defendant Natal after she made numerous complaints to Defendant Mrnaci.

59.    As of September 11, 2018, Plaintiff Mercado had not been contacted by Spina so she emailed Manuel Leon ("Leon"), Vice President of the Union apprising him of her complaints. The Union then commenced an investigation and as a result, Defendant Mrnaci was assigned to look into Plaintiff's complaints regarding Defendant Natal over the next several days. During that time, Defendants relocated Plaintiff to work at the 55 E 34th Street, New York, New York.

60.    On or about September 21, 2018, the Union mediation took place with Plaintiff Mercado and Defendant Natal present along with Union Organizer, Ortiz, Union Delegate, Brown and Union Delegate serving as the Mediator, Richard Smith ("Smith"). During the mediation, Defendant Natal insisted Plaintiff was lying about her hostile behavior. Defendant Natal became irate, and Smith requested Plaintiff vacate the room temporarily in order for him to calm Defendant down. While outside the room, Brown then pressured Plaintiff to admit she was in fact being untruthful about the complaints she lodged against Defendant Natal and stated specifically to "give Kathy what she wants." Brown then insisted it would be best to resolve the situation with Defendant Mount Sinai and to issue Plaintiff, not Defendant Natal, with a formal write-up in lieu of her termination or another form of discipline. Plaintiff was confused as to why she was being punished for her complaints against Defendant.

61.    On or about September 24, 2018 at approximately 12:30 p.m., Brown informed

14

Plaintiff Mercado that Defendant Natal refused to resolve the issue unless she specifically stated to Defendant the words, "I messed up, I should not have done this and I am sorry" and if Plaintiff does not agree to this, it will result in a discipline for Plaintiff in lieu of termination. Defendant Mrnaci showed deference to Defendant Natal and agreed with the decision to discipline Plaintiff if she did not apologize to Defendant Natal.

62.     That same day, Ortiz informed Plaintiff Mercado she wanted to conduct interviews of some of Plaintiff's colleagues who would support Plaintiff's complaints. Ortiz requested Plaintiff collect statements from her colleagues.

63.     On or about September 25, 2018, Plaintiff Mercado delivered statements to Ortiz detailing their witness accounts of Defendant Natal's harassment of Plaintiff. Nothing resulted from Plaintiff giving Ortiz those witness statements.

64.     On or about September 26, 20218 at approximately 1:10 p.m., Plaintiff Mercado spoke with Defendant Mrnaci regarding her enjoyable experience working with the 34th Street staff. Plaintiff also mentioned to Defendant that working in such a hostile environment with Defendant Natal was not healthy for her.

65.     On or about September 26, 2018, Plaintiff Mercado comforted Larco-Brown, who was crying after being bullied and harassed by Defendant Natal. Defendant Mrnaci noticed Plaintiff consoling Larco-Brown in the Mammography Department and directed her not to do so because it will appear Plaintiff and Larco-Brown are conspiring against Defendant Natal.

66.     In or about October 2018, Defendant Yadgarov as an Associate Administrator Radiology Department became Plaintiff Mercado's direct supervisor. Once Plaintiff Mercado started complaining of Defendant Natal's harassment of her to Defendant Yadgarov, he began overscheduling Plaintiff with more patients per shift than the other

Technologists effectively depriving her from taking a lunch break. This occurred on a routine basis. He also assigned Plaintiff with more administrative tasks than the heterosexual Technologists.

67.    On or about January 18, 2019, Defendant Mrnaci requested Shironda Simpson ("Simpson"), Ambulatory Supervisor to remove Plaintiff Mercado from a staff pizza party to tell her not to be on the same department side as Defendant Natal. Defendant Natal requested Plaintiff be removed from her workspace going forward indefinitely. Plaintiff broke out in tears in front of Simpson. Plaintiff then agreed to leave the area.

68.    On or about February 27, 2019, Larco-Brown emailed Defendant Yadgarov formally notifying him of Defendant Natal's on going harassment of Plaintiff Mercado. Thereafter, on August 2, 2019, Larco-Brown sent a lengthy five page email with accompanying exhibits detailing Defendant Natal's harassment and bullying of herself, mentioned Defendant Natal's outburst toward colleague, Rohda Beaubrun in January 2018 and the anger management classes Defendant attended thereafter. Defendants were on notice of Defendant Natal's harassment towards various Mount Sinai employees, specifically Plaintiff after learning of her sexual orientation.

69.    On or about September 17, 2019, while Defendant Yadgarov was not at work, Defendant Natal came to Plaintiff Mercado's side of the department to socialize with Supervisor, Simpson. On two more occasions, Defendant Natal came to Plaintiff's side to socialize. Plaintiff notified Defendant Yadgarov, and he stated he would speak with Defendant Natal about returning the courtesy to Plaintiff of keeping her distance and remaining out of Plaintiff's side of the department. Plaintiff requested a meeting with Defendant Yadgaov to more thoroughly address her concerns involving Defendant Natal's persistent harassment of her.

16

70.    On or about September 18, 2019, while in the front area of the department, Plaintiff Mercado stood near Larco-Brown and Technologist, Larisa Kharats ("Kharats") discussing patients and flow. Defendant Natal clocked in and stuck out her arm a few inches from Plaintiff's face in an effort to provoke her and further harass.

71.    On or about September 27, 2019, Plaintiff Mercado informed Defendant Yadgarov about Defendant Natal's inappropriate conduct, and he responded, "Why were you in the front?" referring to Plaintiff. Defendants did nothing to address Defendant Natal's retaliation towards Plaintiff. Wanda Hoogvorst, Mammography Technologist, complained about Defendant Natal's inappropriate conduct to Defendant Yadgarov as well, and he responded, "She's just like that, you'll have to get used to it."

72.    Throughout her employment, Plaintiff Mercado worked five days a week from Monday through Friday. Her shift was from 7:00 a.m. to 3:00 p.m. with a one-hour lunch break permitted at 12:00 p.m. Now acting as Plaintiff's supervisor, Defendant Yadgarov began routinely overscheduling Plaintiff up to seven patients during one shift, preventing her from taking a lunch break to avoid compromising patient care. In addition to being deprived lunch breaks, on various occasion, she was required to work beyond the end of her 3:00 p.m. shift without any additional overtime compensation.

73.    On or about October 24, 2019, Defendant Yadgarov sent Plaintiff Mercado and other PET/CT Technologists an email mandating them to practice nuclear medicine by administering sentinel injections on patients and acquiring nuclear medicine imaging in violation of the New York Public Health Law §12-b and Article 35 as Plaintiff was not properly licensed.

74.    On or about November 14, 2019, Defendant Natal intentionally physically made

17

contact with Plaintiff Mercado again. Todd Dixon, Secretary at the front desk, witnessed Defendant Natal bump into Plaintiff's shoulder. Immediately after this incident, Plaintiff requested to meet with Defendant Yadgarov and Michael Aird ("Aird"), Lead Technologist (present as a witness to the conversation) to discuss Defendant Natal's continued harassment. Defendant Yadgarov met with Plaintiff but ignored her request to properly address this issue with Defendant Natal. Defendant Natal received no punishment for intentionally physically banging into Plaintiff during work.

75.    Instead, Defendant Yadgarov informed Plaintiff he submitted her complaint to the Human Resources ("HR") department, and he was awaiting a decision from HR on any course of action. In the meantime, he offered Plaintiff temporary displacement to avoid interaction with Defendant Natal. Plaintiff stated she felt unsafe, and Defendant Yadgarov responded he did not think the incident was intentional on Defendant Natal's part (despite not being present at the time the altercation occurred). Plaintiff mentioned it would be unfair to displace her and not Defendant Natal as she was the aggressor in the situation.

76.    On November 21, 2019, Plaintiff Mercado complained to Defendant Yadgarov she was not being given a lunch break due to his overscheduling her shifts with numerous patients.

77.    On November 25, 2019, Plaintiff Mercado was the only PET/CT Technologist working that day, and Defendant required her to handle five patients by herself. Each patient required two hours of treatment time per case. At this time, Plaintiff complained to Defendant he was improperly directing her and other Technologists in the department to practice nuclear medicine imaging. Nuclear medicine imaging requires two licenses received from New York State's Department of Health ("DOH").

18

78.     On November 25, 2019 at approximately 11:30 a.m., Defendant Yadgarov stated he really hoped Plaintiff Mercado would give up her lunch that day to take care of the patients.

79.     That same day, Leon, Vice President of Local 1199 SEIU, emailed Plaintiff Mercado informing her she along with colleague Lacro-Brown were being relocated to Defendant Mount Sinai's Queens location. Plaintiff immediately telephoned Defendant Mrnaci to discuss her relocation as it would be a severe commuting hardship as she was a Bronx resident. Defendant Mrnaci revealed that Leon mistakenly sent that email to Plaintiff, and she was meant to be informed once the transfer was complete. Plaintiff was not ultimately relocated to work in Queens. However, Defendants did relocate Larco-Brown to various locations throughout Manhattan i.e. the Union Square, 59th Street and 34th Street locations.

80.     Shortly after Plaintiff Mercado received the news she may be transferred to Queens, she met with Defendant Yadgarov to discuss the possible transfer and to address the recent second instance of Defendant Natal making physical contact with her while at work. During their meeting, Defendant stated to Plaintiff, "**HR has had it with your complaints**." Plaintiff was surprised at this statement from her supervisor.

81.     On November 26, 2019, Defendant Yadgarov directed Plaintiff Mercado to work beyond her scheduled shift time and had denied her a break that day. Defendant Yadgarov conducted a PET/CT scan on a patient that day, however, he is not licensed to practice nuclear medicine license and therefore violated the DOH's Article 35 requiring such a license.

82.     In or about November 2019, Plaintiff Mercado and Technologists, Kharats and Aird complained to Defendant Yadgarov that he compromised patient care, Plaintiff was routinely being denied lunch breaks and various Technologists were consistently being over worked. Defendant

19

responded that he does not retaliate against them and in response to his violating of Article 35 with practicing nuclear medicine: "I don't care, get it done."

83.     On December 2, 2019, in front of Aird, Plaintiff Mercado and Defendant Yadgarvo agreed it was best Plaintiff not be involved in the sentinel injection assignment and to keep her out of that side of the Mammography Department. Also, Defendant Natal was primarily working in that department. Defendant told Plaintiff with Aird as a witness, it was best for her not to use the department's microwave or refrigerator anymore to avoid any interaction with Defendant Natal. However, he blatantly favored Defendant Natal, freely allowing her to use the kitchen's microwave or refrigerator. From then on, Plaintiff relied upon Kharats or Rosely Quezada ("Quezada") to prepare Plaintiff's food as Defendants now prohibited her from using the kitchen in favor of Defendant Natal, despite her discrimination towards Plaintiff and in retaliation for Plaintiff's complaints of Defendants' harassment and mandate to practice nuclear medicine violating Public Health Law §12-b and the DOH's Article 35.

84.     On January 8, 2020, Defendant Yadgarov summoned Plaintiff Mercado to his office and asked her, "Are you happy here? You don't seem like you're happy here." She responded, "I'm fine." He then pulled out American College of Radiology ("ACR") articles attempting to justify his directives requiring unlicensed Technologists, including himself, to practice nuclear medicine imaging testing within Defendant Mount Sinai's facility.

85.     Prior to this meeting with Defendant Yadgarov, Plaintiff Mercado confirmed with Sean O'Donnelly ("ODonnelly"), physicist of Astarita Associates, a company hired by Defendant Mount Sinai to perform internal audits on behalf of the hospital. With other Technologists present, Plaintiff asked O'Donnelly if it was in compliance of New York State and City laws and rules for CT Technologist to remain with the nuclear patients during scanning. O'Donnelly inquired, "[Do]

you mean can CT Technologists perform Nuclear Medicine imaging? The answer is no." He also explained to Plaintiff that vice-versa, nuclear medicine Technologists cannot perform CT imaging. O'Donnelly asked what was going on within the Radiology department at Defendant Mount Sinai, and she informed him that the hospital's management, Defendant Yadgarov, was mandating the CT Technologists "watch" her patients while they were on the table so she could work with more patients. O'Donnelly definitively stated that management cannot order that as it violated the law.

86.    Shortly thereafter, one of Plaintiff Mercado's fellow Technologists, Dungca emailed the DOH inquiring if two licenses were required to conduct the imaging and if Defendant Yadgarov was possibly violating Article 35. He confirmed with the DOH that Defendant's directive was in fact in violation of that law and jeopardizing public health.

87.    On January 30, 2020, Plaintiff Mercado and Dungca presented Defendant Yadgarov with the DOH email response advising his directive was in violation of the DOH's Article 35. He replied, "This is what you have time for?" and slammed the door on them. As he clearly jeopardized the Technologists' licenses, Plaintff then complained to the Union about the violation and Defendant Yadgarov's reaction in this meeting with Dungca.

88.    On January 30, 2020, Plaintiff Mercado spoke with Defendant Yadgarov while Aird was present regarding Defendant Natal being in the area where Plaintiff had to retrieve her patient charts near the front reception area. Defendant Natal started regularly standing by that area. That Friday after Defendant Yadgarov spoke with Defendant Natal, he informed Plaintiff she was no longer permitted to get her patient charts herself from the front area and not to go by the front desk at all near Defendant Natal. Plaintiff would from then on have to ask other Technologists to bring her the patient charts assigned to her. In addition, she no longer had access to that clock to clock herself into work but had to use a different clock to accommodate Defendant Natal.

21

89.     In or about March 2020, 1199 SEIU Union Organizer, Clarence Brotherson ("Brotherson")conducted an investigation into Plaintiff Mercado's complaints of being discriminated against based on her sexual orientation and retaliated against for complaints of discrimination perpetrated by Defendants Natal and Mrnaci and Defendant Yadgarov's violations of Article 35 and the New York Public Health Law.

90.     During Bortherson's investigation, he spoke to Defendant Yadgarov notifying him of Plaintiff's complaints. It was the Union's policy and practice for Brotherson to interview other members of the Radiology department as well. However, Plaintiff was never informed of the results of that investigation.

91.     Thereafter, Plaintiff Mercado informed 1199 SEIU Social Worker, Kathy Serante of her complaints against Defendants.

92.     On or about August 14, 2020, Daley sent an email requesting a meeting be held to address discrimination based on her sexual orientation and retaliation experienced by Plaintiff Mercado during her employment at Defendant Mount Sinai. No meeting was held. In response, Spina stated in email that there was no need to have a meeting to address the referenced discrimination and retaliation against Plaintiff as Defendant Yadgarov would resign in January 2021.

93.     Between August 24, 2020 to August 26, 2020, Plaintiff Mercado, Aird, Kharats and Dungca requested a meeting with Defendant Yadgarov and invite psychists to discuss whether Defendant's directive for them to practice nuclear medicine was in violation of the DOL's rules, Article 35 in particular, and New York Public Health Law and whether their licenses were being jeopardized. No meeting was held as Defendant refused to engage.

94.     On or about September 14, 2020, Plaintiff Mercado submitted a vacation request to take off days in March 2021 and April 2021.

95.     In or about December 2020, Plaintiff Mercado submitted a second vacation request, which Defendant Yadgarov lost. Plaintiff then had to re-submit the request to him. Plaintiff could not recall the exact date she submitted the original request, wrote the incorrect date and submitted the request. Kharats who submitted her vacation request at the same time Plaintiff originally had, reminded her of the accurate date and Plaintiff attempted to correct the request. Defendant wrote her up for correcting the date on the request.

96.     On January 4, 2021, Defendant Yadgarov held a staff meeting where he approved all vacation requests but publicly denied Plaintiff's. Plaintiff requested Defendant reconsider, and he did ultimately sign her request, which was dated January 4, 2021 approving her March and April vacation days.

97.     In addition, Defendant Yadgarov attempted to deny Plaintiff Mercado her vacation days and questioned her seniority status. During a meeting with Defendant Yadgarov, Plaintiff and Union Delegate, Brown, Defendant agreed to give Plaintiff the vacation days she requested. However, he then stated he wanted to have a meeting with the Director regarding her request. Brown then explained Plaintiff's seniority status in this department as an employee with the hospital since 2016, and Defendant responded Plaintiff could have the vacation but would not *officially* approve yet. Daley also additionally confirmed to Defendant Yadgarov Plaintiff's seniority status in an email.

98.     Prior to Plaintiff Mercado's termination, on or about January 15, 2021, Frank Walter, Security stationed at the building's entrance, witnessed Defendant Yadgarov viewing Plaintiff clock in on the camera to see if she was on time. Plaintiff clocked into work on time.

99.     On or about January 26, 2021, Defendant Yadgarov wrote up Plaintiff Mercado and she was presented with a disciplinary action for correcting her vacation request form.

100.     On or about January 29, 2021, Defendant Yadgarov resigned from his employment with Defendant Mount Sinai. Defendant Agrest was appointed Interim Administrator and became Plaintiff's direct supervisor. Upon becoming her supervisor, Defendant Agrest began assigning Plaintiff duties outside of the scope of her position. Plaintiff complained Defendant Agrest was overscheduling her as one shift she booked her to treat six patients as the only Technologist available that shift. In response to Plaintiff's complaint that she was not given breaks, Defendant criticized her for not being more flexible.

101.     On February 1, 2021, Plaintiff Mercado was contacted by EHS due to COVID-19 exposure by a colleague. The City of New York mandated her to quarantine. She was directed to self-isolate from February 1, 2021 to February 10, 2021. Plaintiff had not tested positive for COVID-19.

102.     On or about February 12, 2021, EHS cleared Plaintiff Mercado to return to work via email sent by Wolleta Blackwood. Plaintiff's employment file contained an Official New York State prescription with a statement dated February 12, 2021 with proof of two negative COVID-19 test results.

103.     During her employment, Plaintiff Mercado was exposed and mandated to quarantine three times for COVID-19 exposure, but she never contracted the virus herself. Defendant Mount Sinai's policy paid employees exposed to COVID-19 for up to three exposures. Defendants failed to properly compensate Plaintiff for the third time she was forced to quarantine as she had received compensation for the first two exposures. Defendant Yadgarov, in retaliation

against Plaintiff, miscategorized Plaintiff's third COVID-19 exposure as her fourth to deprive her of pay.

104.    On or about February 14, 2021, Plaintiff Mercado had booked flights for her wife and herself departing for San Diego, California on March 25, 2021 at 8:01 a.m. with a returning to New York, New York on April 2, 2021 at 9:03 p.m. totaling $665.62. Plaintiff had also reserved an Airbnb on February 15, 2021 for their stay allowing 48 hour cancellation for full refund totaling $1,485.92.

105.    On or about February 19, 2021, Plaintiff Mercado met with Defendant Agrest to discuss the overscheduling of patients issue during Plaintiff's shifts, specifically for the upcoming shift on Monday, February 22, 2021. Defendant Agrest assigned Plaintiff to treat seven patients for that upcoming Monday. During their discussion, Defendant authorized Plaintiff to reschedule two of the Monday patients, but when Plaintiff reported to work on February 22, 2021, Defendant had placed those two patients back on Plaintiff's schedule.

106.    After this occurred, Plaintiff Mercado requested a meeting be scheduled between Defendant Agrest, herself and other Technologists to establish a new scheduling system so management was not routinely overscheduling Technologists and preventing them from taking lunch breaks. However, as of March 22, 2021, Defendant ignored Plaintiff's request and had still not scheduled the meeting.

107.    On or about March 2, 2021, Aird, Dungca and Kharats signed a statement in support of Plaintiff Mercado after Defendant Yadgarov wrote her up for editing the original date on the aforementioned vacation request,.

108.    On or about March 8, 2021, Defendant Agrest requested a meeting with Plaintiff Mercado to discuss her work performance and directed her to bring a Union representative. Present

25

at the meeting were Gomez, Mammography Supervisor, Defendant Mrnaci and Union Delegates, Brown and Daley. Daley, whom was well informed concerning Plaintiff's prior complaints and the retaliation she endured from Defendants, questioned why Plaintiff was being targeted by management.

109.    On or about Friday March 24, 2021, Plaintiff Mercado clocked out of work around approximately 3:00 p.m. at the end of her shift and began the vacation she had been approved to take as of January 4, 2021 by Defendant Yadgarov's signing of her written request. That evening at 6:55 p.m., Defendant Agrest telephoned Plaintiff stating she was required to eport to work on Monday March 28, 2021, or she would suffer disciplinary action inclusive of termination. Defendants were aware Plaintiff had planned a vacation with her wife to San Diego, California and was set to travel on March 25, 2021, which was booked and paid for as of February 14, 2021.

110.    After receiving Defendant Agrest's telephone call, Plaintiff Mercado immediately contacted Daley, Deborah Sanders ("Sanders") and Maria Kercado ("Kercado"), Executive VP of 1199 SEIU, to relay Defendant Agrest's demand she report to work that Monday morning despite her vacation days of March 24, 2021 to April 2, 2021 being approved well in advance of her trip.

111.    On or about March 24, 2021, Defendant Agrest sent an email to Plaintiff Mercado at 7:07 p.m. stating she does not have sufficient vacation time to take vacation, that Defendant confirmed this information with Defendant Mount Sinai's HR department earlier that day and threatened adverse action inclusive of termination again if Plaintiff took the vacation days.

112.    On or about March 26, 2021, to address Plaintiff's withheld compensation accrued in February 2021 during her third COVID-19 exposure, Daley emailed Spina requesting an explanation as to why Plaintiff Mercado was disqualified from quarantine pay as it was her third exposure. Spina responded that same day stating the reasoning was that Plaintiff tested negative

and did not have COVID-19 therefore those days off *i.e.* being required to quarantine by the City of New York, must be designated as sick days, and she would not receive pay.

113.    On or about March 26, 2021, Spina definitively stated Plaintiff Mercado was not entitled to quarantine pay, and additionally mentioned Plaintiff did not have sufficient benefits accrued to cover her March 24, 2021 to April 2, 2021 vacation time. He stated in the email that this was clear to Plaintiff prior to taking vacation.

114.    On or about March 27, 2021, Daley emailed Plaintiff Mercado, after she was physically in California informing her Defendants expected her to be at work on Monday.

115.    Kercado, Executive VP of 1199 SEIU emailed Plaintiff Mercado that same day as well instructing Melissa to stay in close contact with Daley and Sanders.

116.    According to Defendant Mount Sinai's internal benefit records, for the plan term May 16, 2020 to May 15, 2021, Plaintiff Mercado had 52.5 remaining vacation hours, her total balance. This amount demonstrates that she did in fact have enough accrued vacation time to take off work from March 24, 2021 to April 2, 2021.

117.    On March 29, 2021, Plaintiff Mercado was wrongfully terminated in a letter signed by both Defendant Mrnaci and Tara Osterlof ("Osterlof"), Administrator of Radiology due to "job abandonment" after she did not report to work on March 29, 2021 as she was in California on preapproved vacation with her wife. See attached hereto as **Exhibit B**, Email from Defendant Mrnaci and Osterlof dated March 29, 2021.

118.    On March 30, 2021, Plaintiff Mercado filed her EEOC Initial Inquiry seeking an interview to file a formal Charge of Discrimination and Retaliation against Defendants.

119.    As of May 16, 2021, had Plaintiff Mercado not been wrongfully terminated she would have been continuously employed by Defendant Mount Sinai for five years and would have

27

qualified for a pension and raise of approximately $1-2 increase per hour. As of the date of her termination, Plaintiff earned an hourly rate of $50.25.

## II.    PLAINTIFF'S FORMAL EEOC CHARGE OF DISCRIMINATION

120.    On March 30, 2021, Plaintiff Mercado submitted an Initial Inquiry concerning the discrimination and retaliation perpetrated by her former employers to the EEOC, which set up an appointment to formally interview her on September 7, 2021.

121.    On September 7, 2021, Plaintiff Mercado was interviewed by the EEOC.

122.    On September 8, 2021, Plaintiff filed a Charge of Discrimination complaining to an Investigator of the EEOC – New York District Office regarding unfair discriminatory treatment and retaliation she received during her employment with Defendants. *See* **Exhibit A**.

123.    Plaintiff Mercado received a Dismissal and Notice of Rights dated September 10, 2021. The Dismissal and Notice of Rights stated the EEOC was closing its file on Plaintiff's Charge because the EEOC determined "it will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes." *See* **Exhibit A**.

### FIRST CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e *et seq.,* and its Amendments for Sexual Orientation Discrimination and Disparate Treatment — Against All Defendants**

124.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

125.    Defendants discriminated against Plaintiff on the basis of her sexual orientation in

28

violation of Title VII. Defendants engaged and allowed their employees, managers, and agents to engage in a course of conduct which included without limitation: assigning Plaintiff more patients per shift than heterosexual Technologists and delegating her more administrative tasks based on her sexual orientation, which consistently prevented her from taking lunch breaks, denying Plaintiff vacation time, Defendant Yadgarov publicly embarrassing Plaintiff by approving all other employees' vacation requests except her request during a gathering, revoking her seniority status despite being employed by the hospital for five years without receiving any disciplinary action, facilitating discrimination, a hostile work environment and retaliation by permitting Defendant Natal to harass Plaintiff without consequence and imposing a mandate for unlicensed Technologists to practice nuclear medicine in violation of the Department of Health's regulation Article 35 and the New York Public Health Law §12-b, Defendant Yadgarov harassing Plaintiff by routinely viewing security videos of her clocking into work searching for an infraction to discipline her, Defendant Natal's consistent harassment and physical contact with Plaintiff's person at work, improperly withholding wages owed during a mandatory quarantine imposed by the City of New York's EHS due to COVID-19 exposure during a shift, seeking her transfer from the Manhattan location to Queens resulting in a commuting hardship and threatening disciplinary action if Plaintiff took previously approved vacation beginning on March 24, 2021 until April 2, 2021 resulting in termination on March 29, 2021. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

126.    Defendants' willful acts and omissions constitute unlawful discrimination against Plaintiff based on her sexual orientation in violation of Title VII.

127.    But for Plaintiff's sexual orientation as a lesbian female PET/CT Technologist, Plaintiff would not have been harassed, treated unfairly, disciplined, overscheduled, denied lunch

breaks, denied vacation request, retaliated against and wrongfully terminated.

128.   As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

129.   As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SECOND CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e *et seq.,* and its Amendments for Hostile Work Environment on the Basis of Sexual Orientation — Against All Defendants**

130.   Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

131.   Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a lesbian PET/CT Technologist.

132.   Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on sexual orientation sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of Title VII.

133.   As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

134.   As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

30

## THIRD CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and its Amendments for Retaliation — Against All Defendants

135.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

136.    Plaintiff engaged in protected activities when she made multiple complaints of discrimination to Defendant Mount Sinai's management *i.e.* Defendants Yadgarov and Mrnaci, colleagues, Enrico Dungca, Rosely Quezada, Larisa Kharats, Michael Aird, Larco-Brown and various SEI 1099 Union Delegates throughout 2018 to 2021 against Defendants' discrimination and retaliation.

137.    As a result of and in response to these complaints and Plaintiff's opposition to discrimination, Defendants retaliated against Plaintiff by harassing her, overscheduling her, denying her lunch breaks, denying vacation requests, attempting to relocate her to Queens, mandating she violate the DOH's Article 35 and the Public Health Law by the unauthorized practice of nuclear medicine, jeopardizing her license and threatening disciplinary action inclusive of termination if she did not forgo her pre-approved vacation scheduled for March 24, 2021 to April 2, 2021 and ultimately terminating her on March 29, 2021.

138.    By the acts and practices described above, Defendants Yadgarov and Mrnaci retaliated against Plaintiff for engaging in protected activities in violation of Title VII.

139.    Defendants Yadgarov and Mrnaci further allowed an employee under their management, Defendant Natal, to discriminate against, harass, bully, physically intimidate, batter and retaliate against Plaintiff for engaging in protected activities in violation of Title VII and failed

31

to take reasonable actions to address such conduct even after Plaintiff brought it to Defendants' attention on various occasions.

140. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

141. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## **FOURTH CAUSE OF ACTION**

### **Violation of the New York State Human Rights Law for Sexual Orientation Discrimination— Against All Defendants**

142. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

143. New York Execute Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

144. By the aforementioned acts, Plaintiff has been discriminated against by Defendants, on the basis of her sexual orientation in violation of the NYSHRL.

145. But for Plaintiff's sexual orientation, she would not have been discriminated against, harassed, denied her vacation request, disciplined, retaliated against, threatened with disciplinary action for taking previously approved vacation days and wrongfully terminated. Any

reasons proffered by Defendants for unfairly treating and retaliating against Plaintiff are a pretext for discriminating against Plaintiff based on her sexual orientation.

146.    Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on her sexual orientation in violation of the NYSHRL.

147.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

148.    As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## FIFTH CAUSE OF ACTION

### Violation of the New York City Human Rights Law for Sexual Orientation Discrimination — Against All Defendants

149.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

150.    The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

151.    By the aforementioned acts, Defendants discriminated against Plaintiff, by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of her sexual orientation.

33

152. But for Plaintiff's sexual orientation, she would not have been discriminated against, harassed, denied her vacation request, disciplined, retaliated against, threatened disciplinary action for taking previously approved vacation days and wrongfully terminated.

153. Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on her sexual orientation in violation of the NYCHRL.

154. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

155. As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SIXTH CAUSE OF ACTION

### Violation of New York State Human Rights Law for Hostile Work Environment on the Basis of Sexual Orientation — Against All Defendants

156. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

157. Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a lesbian PET/CT Technologist.

158. Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on sexual orientation sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYHRL.

159. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

160. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff

34

has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SEVENTH CAUSE OF ACTION

### Violation Of New York City Human Rights Law For Hostile Work Environment on the Basis of Sexual Orientation — Against All Defendants

161.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

162.    Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a lesbian PET/CT Technologist.

163.    Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on sexual orientation sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYCHRL.

164.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

165.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## EIGHTH CAUSE OF ACTION

### Violation of New York State Human Rights Law For Retaliation — Against All Defendants

166.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

167.    New York State Executive Law §296(7) provides that it shall be an unlawful

35

discriminatory practice: "For any person engaged in any such activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practice forbidden under this article."

168.    Plaintiff engaged in protected activities when making multiple complaints of discrimination, retaliation, overscheduling of Plaintiff and pressure to violate Article  35 and the New York Public Health Law §12-b via Defendants' mandate to practice nuclear medicine.

169.    Plaintiff made multiple complaints and experienced adverse employment actions As a result including, but not limited to, the following: assigning Plaintiff more patients per shift than heterosexual Technologists and delegating her more administrative tasks based on her sexual orientation, which consistently prevented her from taking lunch breaks, denying Plaintiff vacation time, Defendant Yadgarov publicly embarrassing Plaintiff by approving all other employees' vacation requests except her request during a gathering, revoking her seniority status despite being employed by the hospital for five years without receiving any disciplinary action, facilitating discrimination, a hostile work environment and retaliation by permitting Defendant Natal to harass Plaintiff without consequence and imposing a mandate for unlicensed Technologists to practice nuclear medicine in violation of the Department of Health's regulation Article 35 and the New York Public Health Law §12-b, Defendant Yadgarov harassing Plaintiff by routinely viewing security videos of her clocking into work searching for an infraction to discipline her, Defendant Natal's consistent harassment and physical contact with Plaintiff's person at work, improperly withholding wages owed during a mandatory quarantine imposed by the City of New York's EHS due to COVID-19 exposure during a shift, seeking her transfer from the Manhattan location to Queens resulting in a commuting hardship and threatening disciplinary action if Plaintiff took previously approved vacation beginning on March 24, 2021 until April 2, 2021 resulting in

36

termination on March 29, 2021. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

170.     By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

171.     By the above-described unlawful conduct, the individually named Defendant Yadgarov, in his individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

172.     By the above-described unlawful conduct, the individually named Defendant Agrest, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

173.     By the above-described unlawful conduct, the individually named Defendant Mrnaci, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

174.     By the above-described unlawful conduct, the individually named Defendant Natal, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

175.   As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

176.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## NINTH CAUSE OF ACTION

**Violation Of New York City Human Rights Law For Retaliation
— Against All Defendants**

37

177.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

178.    New York City Administrative Code §8-107(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden under this chapter."

179.    Plaintiff engaged in protected activities when making multiple complaints of Discrimination, retaliation, overscheduling and pressure to violate Article 35 and the New York Public Health Law §12-b via Defendants' mandate to practice nuclear medicine.

180.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: assigning Plaintiff more patients per shift than heterosexual Technologists and delegating her more administrative tasks based on her sexual orientation, which consistently prevented her from taking lunch breaks, denying Plaintiff vacation time, Defendant Yadgarov publicly embarrassing Plaintiff by approving all other employees' vacation requests except her request during a gathering, revoking her seniority status despite being employed by the hospital for five years without receiving any disciplinary action, facilitating discrimination, a hostile work environment and retaliation by permitting Defendant Natal to harass Plaintiff without consequence and imposing a mandate for unlicensed Technologists to practice nuclear medicine in violation of the Department of Health's regulation Article 35 and the New York Public Health Law §12-b, Defendant Yadgarov harassing Plaintiff by routinely viewing security videos of her clocking into work searching for an infraction to discipline her, Defendant Natal's consistent harassment and physical contact with Plaintiff's person at work, improperly

withholding wages owed during a mandatory quarantine imposed by the City of New York's EHS due to COVID-19 exposure during a shift, seeking her transfer from the Manhattan location to Queens resulting in a commuting hardship and threatening disciplinary action if Plaintiff took previously approved vacation beginning on March 24, 2021 until April 2, 2021 resulting in termination on March 29, 2021. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

181.   By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

182.   By the above-described unlawful conduct, the individually named Defendant Yadgarov, in his individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

183.   By the above-described unlawful conduct, the individually named Defendant Agrest, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

184.   By the above-described unlawful conduct, the individually named Defendant Mrnaci, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

185.   By the above-described unlawful conduct, the individually named Defendant Natal, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

186.   As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

187.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and

is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## TENTH CAUSE OF ACTION

### Violation of New York City Human Rights Law For Aiding, Abetting, Inciting, Compelling and Coercing Sexual Orientation Forbidden Acts — Against Defendants Artur Yadgarov, Irina Agrest and Diella Mrnaci

188. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

189. The New York City Administrative Code §8-107(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

190. Defendants Yadgarov, Agrest and Mrnaci engaged in conduct that aided, abetted, incited, compelled and coerced acts forbidden under New York City Human Rights Law, Administrative Code §8-101, *et seq.,* in violation of Administrative Code §8-107(6).

191. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## ELEVENTH CAUSE OF ACTION

### In Violation of the New York Labor Law prohibiting retaliatory personnel by employers for a complaint under New York Labor Law §215 – Against All Defendants

192. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

193. During Plaintiff's employment with Defendants, Defendants retaliated against Plaintiff after she complained of harassment by Defendant Natal based on her sexual orientation

40

and being pressured to practice nuclear medicine in violation of the DOH's Article 35 and the New York Public Health Law despite her protestations to not jeopardize her PET/CT Technologist's license, specifically complaints of the administering of sentinel injections to patients. Such exposure of Plaintiff to Defendants' activities, policies and practices created a substantial and specific danger to the general public's health and safety in violation of Article 35.

194.   Plaintiff's notice to her supervisor, Defendant Yadgarov as well as Defendants Agrest and Mrnaci of such violation and notification of the illegal practices occurring within Mount Sinai directly to the Department of Labor resulted in Defendants' adverse action taken against Plaintiff because of her disclosure to her supervisor and the DOL seeking an investigation of such a violation.

195.   Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

196.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

197.   As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Mercado demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Melissa Jaylene Mercado requests judgment against Defendants Mount Sinai Beth Israel, Mount Sinai Health System, Inc., Artur Yadgarov, Irina Agrest, Diella Mrnaci and Katherine Quinones-Natal and respectfully requests that this Court:

(a)     Declare the discriminatory acts and practices and retaliation of Defendants complained of herein violated Plaintiff Mercado's rights under Title VII, the NYHRL, the NYCHRL and NYLL;

(b)     Grant Plaintiff Mercado actual, consequential, liquidated, punitive and any other damages that the Court may deem appropriate against Defendants;

(c)     Order Defendants to pay lost, foregone and future wages to Plaintiff Mercado;

(d)     Order Defendants to pay Plaintiff Mercado's reasonably incurred attorneys' fees, costs and disbursements; and

(e)     Grant Plaintiff Mercado, such other and further relief as this Court deems just and proper.

Dated: New York, New York
         December 7, 2021

_Olivia Clancy_
Jon Choate, Esq,
Olivia M. Clancy, Esq.
SHEGERIAN & ASSOCIATES
*Attorneys for Plaintiff*
**MELISSA JAYLENE MERCADO**
90 Broad Street, Suite 804
New York, New York 10004
(212) 257-8883

42