UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA JAYLENE MERCADO,

                Plaintiff,

      -against-

MOUNT SINAI BETH ISRAEL, et al.,

                Defendants.

1:21-cv-10467 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      Plaintiff Melissa Jaylene Mercado ("Plaintiff") brings this action against Mount Sinai Beth Israel ("MSBI"), doing business as Mount Sinai Health Systems, Inc., and individuals Artur Yadgarov ("Yadgarov"), Irina Agrest ("Agrest"), Diella Mrnaci ("Mrnaci"), and Katherine Quinones-Natal ("Natal," and collectively, "Defendants"), asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 215. *See* ECF No. 1 ("Compl.").  Now before the Court is Defendants' motion for summary judgment on all claims.  *See* ECF Nos. 62 ("Mot."), 64 ("Br."), 75 ("Reply").[1] Plaintiff opposes that motion.  *See* ECF No. 73 ("Opp.").[2]  For the reasons that follow, Defendants' motion is GRANTED.

---

[1] Defendants also filed: a statement of undisputed facts (ECF No. 65 ("SOF")); a declaration from Rory J. McEvoy ("McEvoy") with exhibits (ECF No. 63 ("McEvoy Decl.")); and a reply declaration from McEvoy with an exhibit (ECF No. 74 ("McEvoy Reply Decl.")).

[2] Plaintiff also filed: a counterstatement of undisputed facts (ECF No. 69 ("CSOF")); and a declaration from Olivia M. Clancy with exhibits (ECF No. 68 ("Clancy Decl.")).

## BACKGROUND

The following facts are taken from the evidence submitted in connection with

Defendants' summary judgment motion.  Unless otherwise noted, the facts are undisputed and

taken in the light most favorable to Plaintiff.[3]

### I.    The Parties

Plaintiff Melissa Mercado is a PET/CT Technologist who began working for MSBI's

Blavatnik Family Chelsea Medical Center ("CMC") on May 16, 2016.  CSOF ¶ 1.  She is also a

lesbian.  *Id.* ¶ 7.  Plaintiff began telling MSBI staff about her sexuality and marriage to her wife

as early as August 2016.  *See* Opp. at 17.  Her managers, supervisors, and co-workers at MSBI,

including the individual Defendants, were aware of her sexual orientation.  CSOF ¶¶ 8-9.  At

least one other technologist in Plaintiff's department at MSBI was also open about their

homosexuality.  *Id.* ¶¶ 11-12.

---

[3] Citations to the Rule 56.1 statements incorporate by reference the record evidence cited therein.
Where facts stated in a party's Rule 56.1 statement are supported by admissible record evidence,
and denied by a conclusory statement by the other party without citation to conflicting
admissible record evidence, the Court deems such facts as admitted.  *See* S.D.N.Y. Local Rule
56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement
required to be served by the moving party will be deemed to be admitted for purposes of the
motion unless specifically controverted by a correspondingly numbered paragraph in the
statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the
movant or opponent . . . controverting any statement of material fact[] must be followed by
citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).");
*Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then
fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be
deemed admitted."); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 691 (S.D.N.Y. 2022) (disregarding
responses to a Rule 56.1 statement consisting of blanket denials, wholesale evidentiary
objections, or citations that lack evidentiary support or rely on allegations in the complaint); *see
also Scotto v. Brady*, 410 F. App'x. 355, 361 (2d Cir. 2010) ("[W]e observe that a 'district court
deciding a summary judgment motion has broad discretion in choosing whether to admit
evidence,' and that '[t]he principles governing admissibility of evidence do not change on a
motion for summary judgment.'" (quoting *Presbyterian Church of Sudan v. Talisman Energy,
Inc.*, 582 F.3d 244, 264 (2d Cir. 2009))).

The individual Defendants are former or current MSBI employees.  CSOF ¶¶ 3-6.
Defendant Artur Yadgarov was employed by MSBI as the Assistant Administrator at CMC until
January 2021.  *Id.* ¶ 3.  Irina Agrest temporarily assumed the role of Assistant Administrator at
CMC from February 2021 until September 2022.  *Id.* ¶ 4.  Diella Mrnaci served as the Director
of Radiology for MSBI's ambulatory centers, including CMC, from August 2019 until
September 2021.  *Id.* ¶ 5.  Katherine Quinones-Natal is a Special Procedures Mammography
Technologist at CMC.  *Id.* ¶ 6.

## II.     Workplace Complaints

Plaintiff made various workplace complaints during her employment at MSBI.  Some of
those complaints concerned Plaintiff's coworker, Natal.  *Id.* ¶ 21.  Plaintiff and Natal both
worked as technologists on the same floor at MSBI's CMC location.  *Id.* ¶ 19.  The floor was
shaped like a "U", with PET/CT technologists like Plaintiff located on one side, and
mammography technologists like Natal on the other side.  *Id.* ¶¶ 19-20.

On September 7, 2018, Plaintiff sent an email regarding Natal to MSBI's Vice President
of Labor Relations, Christopher Berner ("Berner").  *Id.* ¶ 22.  Plaintiff complained that Natal:
"(i) confronted her after Plaintiff said that she smelled a rat; (ii) asked her if [Plaintiff] could help
a co-worker with IVs; (iii) walked towards her without giving [Plaintiff] room to pass; (iv)
questioned her and co-workers regarding ordering doses of injections; (v) walked into her; and
(vi) looked at her in a 'provoking manner.'"  *Id.*; McEvoy Decl., Ex. 1; *see also* CSOF ¶ 77.  The
email did not state that Natal's conduct was discriminatory or otherwise based on Plaintiff's
sexual orientation.  CSOF ¶¶ 23, 79; *see* McEvoy Decl., Ex. 1 at 105:24-106:3.

In response to this complaint, MSBI temporarily relocated Plaintiff and Natal to separate
locations.  CSOF ¶¶ 25-27.  Natal temporarily transferred to MSBI's Union Square location,

while Plaintiff temporarily transferred to MSBI's 34th Street location.  *Id.*  Mrnaci investigated Plaintiff's complaint, and testified that he is not aware of any complaint against Natal, including Plaintiff's complaint, having been substantiated.  *Id.* ¶¶ 24-25; *see* McEvoy Decl., Ex. 5 at 22:25-23:4.  Following the investigation, Plaintiff and Natal returned to CMC and were instructed to avoid each other's sides of the floor.  CSOF ¶ 29.

On October 1, 2019, Plaintiff complained to Yadgarov that Natal had entered Plaintiff's side of the department floor the prior month to socialize and eat lunch.  *Id.* ¶ 30.  In November 2019, Plaintiff complained to Yadgarov again, this time that Natal had bumped into her.  *Id.* ¶ 31.  In response, Yadgarov informed MSBI's Labor Relations department about Plaintiff's additional complaints about Natal.  *Id.* ¶ 32.  Yadgarov also offered to temporarily relocate Plaintiff if she felt unsafe, which Plaintiff declined.  *Id.* ¶¶ 32-33.  Plaintiff was not the only employee at MSBI who complained about Natal.  *Id.* ¶¶ 36-37.  At least one other technologist, Patrique Larco-Brown ("Larco"), who was heterosexual, similarly complained about Natal's behavior.  *Id.*

Aside from Natal's behavior, Plaintiff and her coworkers also complained about their workload at MSBI.  Plaintiff claims that, in August 2018, she and her coworker, Enrico Dungca, complained to Yadgarov about technologists being overscheduled.  *Id.* ¶ 39.  In or about 2020, Plaintiff and her coworker, Larissa Kharats, complained to Yadgarov that handling five patients in a day was too much work.  *Id.* ¶ 39.  Plaintiff also complained that, as a result of her workload, she had to work through lunch or work overtime.  *Id.* ¶ 40.  Notably, the volume of patients remained the same for all technologists, and it was usual for a PET/CT technologist to handle five patients when they were the only technologist working on a given day.  *Id.* ¶¶ 38, 44.

Notwithstanding these workplace complaints, the parties agree, and the evidence shows, that "[n]o one at MSBI: (i) made comments to [Plaintiff] about her sexual orientation; (ii) told

[Plaintiff] that they heard someone make comments about her sexual orientation; (iii) made comments to [Plaintiff] about someone else's sexual orientation; or (iv) told [Plaintiff] that they heard someone make comments about someone else's sexual orientation." *Id.* ¶ 14.

### III.    The January Disciplinary Warning

On or around January 4, 2021, Plaintiff claims that she submitted a vacation request form to Yadgarov. *Id.* ¶ 45.  The parties dispute whether Yadgarov lost that form. *See id.* ¶ 47. It is undisputed, however, that on January 6, 2021, while Yadgarov was not in his office, Plaintiff picked up from his desk a vacation request form that she had previously submitted, altered the request submission date on the form, and put the form back on his desk. *Id.* Yadgarov noticed that the form had been altered, and consulted the Labor Relations department about taking disciplinary action against Plaintiff. *Id.* ¶¶ 48-50.  On January 28, 2021, MSBI disciplined Plaintiff by issuing her a "final warning." *Id.* ¶ 51.  Plaintiff claims that MSBI issued this final warning in lieu of terminating her employment at that time. *Id.*

### IV.    Paid Time Off

On February 1, 2021, Plaintiff was evaluated by MSBI's employee health services for a COVID-19 exposure and advised to self-isolate. *Id.* ¶ 52.  On February 12, 2021, Plaintiff tested negative and was cleared to return to work. *Id.* ¶¶ 53-54.  Four days later, Plaintiff was informed that she would not receive quarantine pay for her February absence. *Id.* ¶ 55.  Defendants claim that Plaintiff was ineligible for the quarantine pay because she tested negative for COVID-19. SOF ¶ 55.  Plaintiff claims that she was denied quarantine pay because MSBI incorrectly coded two days that she was absent in January 2021 as a quarantine pay period rather than as sick days, leaving her without any remaining quarantine period to use in February.  CSOF ¶ 55.  Plaintiff further claims that, because the pay period was set to close the next day and payroll had to be

entered by then, Plaintiff used her remaining sick days plus three vacation days for her February absence and asked that her allocation of paid time off be rectified once she returned to work.  *Id.* ¶¶ 60-62; *see* Clancy Decl., Ex. 12, Bates Nos. 189-195.  Plaintiff's January absence was subsequently recoded from quarantine pay to vacation time.  CSOF ¶ 59.

## V.       The March 2021 Meeting

On March 8, 2021, Agrest emailed Plaintiff to request a meeting regarding "aspects of [her] work performance."  McEvoy Decl., Ex. 1 at ECF p. 133; *see* CSOF ¶ 63.  On March 12, 2021, Plaintiff met with Agrest, Mrnaci, a mammography supervisor named Jasmine Gomez, and a representative from Plaintiff's labor union, 1199SEIU United Healthcare Workers East ("1199").  CSOF ¶¶ 2, 63.  At the meeting, Agrest verbally counseled Plaintiff for her late attendance to work.  *Id.* ¶ 64; *see* McEvoy Decl., Ex. 1 at ECF pp. 32-33.  According to Plaintiff, Agrest also had a written disciplinary warning for her, but Plaintiff's 1199 representative prevented Agrest from issuing the written warning at that time because this was their first conversation about Plaintiff's failure to arrive at work on time.  CSOF ¶ 64.  Plaintiff speculates that the March 8 email was a retaliatory effort to write-up Plaintiff and terminate her employment.  *Id.* ¶¶ 83-84.

## VI.      Notice of Termination

Plaintiff planned to take vacation in California on March 25 to April 2, 2021.  CSOF ¶ 66.  On Wednesday, March 24, Agrest learned that Plaintiff's paid time off balance had been adjusted to reflect the use of vacation days during her absence in February.  *Id.* ¶ 67.  Agrest passed this information to Plaintiff that same day, informing her that she had only 15 hours of vacation time remaining, and that she would have to return to work on Monday, March 29 or else

face disciplinary action. *Id.* ¶ 69. Plaintiff proceeded with her vacation as planned and did not return to work on March 29 as directed. *Id.* ¶ 70.

On March 29, 2021, MSBI terminated Plaintiff's employment when she failed to report to work. *Id.* In a termination letter dated March 29, Mrnaci stated that Plaintiff's "failure to return is in violation of policy" and her employment was therefore "being terminated effective immediately for job abandonment." Clancy Decl., Ex. 11 at Bates No. PLF000053. MSBI similarly sent a notice of termination to Plaintiff's union representative, dated March 30, stating that Plaintiff had been fired "for poor conduct/failure to return to work" on March 29. *Id.* at Bates No. PLF000052.

### VII.   Procedural History

Plaintiff initiated this action on December 7, 2021. *See generally* Compl. Plaintiff asserts eleven counts in the Complaint, the first nine based on her sexual orientation: violation of Title VII against all Defendants for discrimination (Count 1), hostile work environment (Count 2), and retaliation (Count 3); violation of the NYSHRL against all Defendants for discrimination (Count 4), hostile work environment (Count 6), and retaliation (Count 8); violation of the NYCHRL against all Defendants for discrimination (Count 5), hostile work environment (Count 7), and retaliation (Count 9), and against Yadgarov, Agrest, and Mrnaci for aiding, abetting, inciting, compelling and coercing forbidden acts (Count 10); and violation of the NYLL against all Defendants for retaliation (Count 11). *See* Compl. ¶¶ 124-197.

On February 23, 2023, Defendants moved for summary judgment. *See* Mot. Plaintiff opposed that motion on March 14, 2023 and filed a Rule 56.1 counter-statement. *See* ECF No. 66; CSOF. The statement of facts in Plaintiff's memorandum of law cites barely any record evidence, instead relying on allegations in the Complaint. ECF No. 66; Opp. Nor does

Plaintiff's counter-statement include any statement of additional facts.  *See* CSOF.  Defendants

point out that Plaintiff also (i) does not dispute 47 of Defendants' statements of fact, *see id.* ¶¶ 1-

9, 11, 14-15, 18-22, 25-27, 29-31, 33, 36-38, 40, 42, 44-45, 50, 53-54, 56, 58-59, 63, 71, 77, 81,

83-87; (ii) disputes or objects to nine statements without citing specific record evidence, *see id.*

¶¶ 16-17, 41, 67, 74-76, 79-80; (iii) disputes eleven statements without contesting the facts in

those statements, *see id.* ¶¶ 24, 28, 39, 47, 51, 55, 57, 68-70, 82; and (iv) objects to eight

statements as "argumentative," without foundation, or "vague and unintelligible" without

substantiating her objections or contesting the facts, *id.* ¶¶ 16-17, 41, 74-76, 79-80.  *See* Reply

at 1-2.

On March 15, 2023, Defendants requested that the Court reject Plaintiff's memorandum

of law in opposition because it failed to comply with the applicable rules, since it exceeded the

page limit by eight pages and did not contain any table of authorities.  ECF No. 71.  The Court

ordered Plaintiff to re-submit a memorandum of law that cured these deficiencies, which Plaintiff

did on March 20, 2023.  ECF No. 72; *see* Opp.  Defendants filed their reply on April 4, 2023.

*See* Reply.  Defendants' motion for summary judgment is now fully briefed.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a moving party is entitled to

summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. ("Rule") 56(a).  A fact is "material" only if it "might affect the outcome of the suit under the

governing law," *id.*, and a dispute is genuine if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  To survive summary judgment, "a plaintiff must provide more than conclusory

allegations . . . and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 101 (2d Cir. 2010) (internal quotation marks and citations omitted).

In deciding a summary judgment motion, courts "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Rule 56, however, "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). It is instead the parties' responsibility to "point out" contested facts for the Court, and to "clarify the elements of the substantive law which remain at issue because they turn on contested facts." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury–Avon Preservation Society, LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In that event, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322-23). "Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

**DISCUSSION**

Defendants argue that summary judgment should be granted in their favor on all claims. First, Defendants argue that Plaintiff's discrimination claims fail because Plaintiff has not established a *prima facie* case, and in any event, Plaintiff was terminated for a legitimate and non-discriminatory reason. *See* Br. at 8-12. Second, Defendants argue that Plaintiff has failed to substantiate her hostile work environment claims. *See id.* at 12-14. Third, Defendants argue that Plaintiff's retaliation claims fail for a host of reasons, including that Plaintiff did not engage in protected activity and cannot establish causation. *See id.* at 14-18. The Court will analyze these arguments in turn.

## I. Sexual Orientation Discrimination

### A. Title VII Claim

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination claims under Title VII are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023). Under that framework, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). To satisfy this burden, the plaintiff must show that (1) she "belonged to a protected class," (2) she was "qualified for the position [s]he held," (3) she "suffered an adverse employment action," and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138)).

If the plaintiff establishes a *prima facie* case, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  At that stage, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee." *Carr*, 76 F.th at 177.  The employer's burden is one of production, while the plaintiff bears "the ultimate burden of persuading the court that she was the victim of intentional discrimination." *Id.* (quoting *Texas Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

If the employer satisfies its burden of production, the presumption of discriminatory intent falls away, and "the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) (quoting *Legg v. Ulster County*, 820 F.3d 67, 73 (2d Cir. 2016)).  The plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons preferred by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)) (internal alterations adopted).

Here, Defendants do not contest that Plaintiff satisfied the first two elements of her *prima facie* case.  *See generally* Br. at 8-12.  The Court, therefore, assumes that (1) as a lesbian, Plaintiff is a member of a protected class, and (2) as a PET/CT Technologist who held that position for several years, Plaintiff was qualified for her job.  CSOF ¶¶ 1, 7.  Defendants instead argue that Plaintiff has failed to show (3) any adverse action other than her termination, and (4) circumstances giving rise to an inference of discriminatory intent.  *See* Br. at 8-12.  Defendants

also argue that, even if Plaintiff could establish a *prima facie* case, their termination decision was based on a legitimate, non-discriminatory reason, and Plaintiff has not shown that reason was pretext for discrimination.  *See id.*  The Court agrees with Defendants on each ground.

### i.  Adverse Action

The third element of Plaintiff's *prima facie* case requires a "'materially adverse change' in the terms and conditions of employment."  *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal citation omitted).  "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.* (quoting *Terry*, 336 F.3d at 138).

Defendants acknowledge that Plaintiff's employment termination constitutes an adverse action.  *See* Br. at 9.  The Court, therefore, finds that Plaintiff has shown at least one adverse action sufficient to satisfy the third element of her *prima facie* case.  However, Defendants argue that Plaintiff's employment termination is the *only* adverse action, and that none of the other alleged discriminatory acts qualify as adverse acts.  *See id.* at 9.  Plaintiff argues that she suffered additional adverse actions when she was "consistently reprimanded and isolated, not allowed to use the breakroom, [and] told she was not allowed to go near Natal's work space or clock in to work a [sic] particular clock nearby Natal."  Opp. at 18.  Plaintiff's argument fails.

First, Plaintiff does not cite any record evidence or case authority to substantiate these alleged adverse actions.  *Id.*  Nor does she address the authority cited by Defendants in their

opening brief.  *Id.*; *see also* Br. at 9-10.  "Courts need not consider cursory arguments of this kind, and the Court declines to do so here."  *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 432 n.17 (S.D.N.Y. 2019) (internal citation omitted); *see Allstate Vehicle & Prop. Ins. Co. v. Mars*, 533 F. Supp. 3d 71, 82 (E.D.N.Y. 2021) (declining to consider unsupported, cursory argument); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 385 (S.D.N.Y. 2009) (noting that a party opposing summary judgment must rely on evidence, not "pleadings or merely conclusory factual allegations").

Second, even if considered, none of the actions identified by Plaintiff qualify as adverse. Plaintiff has not presented evidence demonstrating that being reprimanded and isolated, not allowed to use the breakroom, or told not to go near Natal's workspace materially affected her employment.  *See also* Opp. at 18.  Nor has Plaintiff presented evidence that these actions – vague as they are – affected the terms of her employment or created an excessively heavy workload.  Without a more fulsome factual showing, Plaintiff has failed to show that these incidents qualify as adverse actions.  *See, e.g.*, *Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 477 (S.D.N.Y. 2017) (granting summary judgment for the employer because, in the absence of particular facts showing a material and negative change in employment, "questioning," "excessive monitoring," "checking-in," and the "lateral transfer" of the plaintiff did not amount to adverse actions); *Dawson v. Long*, No. 16-cv-01608 (GBD) (RWL), 2018 WL 5914859, at *10 (S.D.N.Y. Aug. 20, 2018) (concluding that "having to work at the hot seat, filing forms, not receiving administrative rights, receiving write-ups, being called a derogatory name . . . , and being asked to work during a meal," without more, did not amount to adverse actions sufficient to withstand summary judgment), *report and recommendation adopted*, No. 16-cv-01608 (GBD) (RWL), 2018 WL 4519199 (S.D.N.Y. Sept. 20, 2018); *see also Tepperwien*

*v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) (concluding that reprimands and "threats . . . made in the course of a heated conversation" but not carried out, fell into the category of "'trivial harms' and 'petty slights or minor annoyances'").

In sum, the Court finds that Plaintiff's employment termination constitutes an adverse action sufficient to satisfy element three of her *prima facie* case, but Plaintiff has not shown that other allegedly discriminatory acts are similarly adverse.[4]

### ii. Inference of Discriminatory Intent

Once the plaintiff has shown an adverse action, she must also show that the action was made under circumstances giving rise to "an inference of discriminatory intent." *Brown*, 673 F.3d at 150 (quoting *Holcomb*, 521 F.3d at 138)). "A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal citations omitted). Such circumstances may include "the employer's criticism of the plaintiff's performance in . . . degrading terms [i.e., degrading of her sexual orientation]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v.*

---

[4] To the extent that there are additional acts in the record that could be considered adverse, Plaintiff does not make that argument in her brief, and the Court deems it waived. *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived."); *see, e.g.*, *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137 (JPC) (JLC), 2023 WL 2745556, at *17 n.22 (S.D.N.Y. Mar. 31, 2023) (declining to consider basis for discrimination claim that was not raised in the plaintiff's opposition brief). Even if Plaintiff had shown that additional actions were adverse, Plaintiff's discrimination claims still fail because she has not raised an inference of discriminatory intent with respect to any action nor rebutted Defendants' legitimate, non-discriminatory reason for their conduct. *See infra* Discussion §§ 2(A)(i)-(ii).

*City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Plaintiff has not come forward with direct evidence of discrimination in this case. Instead, she presents a variety of circumstances to raise an inference of discrimination.  She states that Yadgarov, her "direct supervisor, . . . t[old] her HR had had enough of her complaints, overschedul[ed] her up to seven patients in one shift, prevent[ed] her from taking lunch breaks, routinely requir[ed] her to work beyond the end of her shift, deprived her of wages owed during a mandatory quarantine . . . , delegated more administrative tasks [to her] than other heterosexual PET/CT Technologists (Todd Dixon and Denise Va[s]quez), [and] threatened [her] with a Queens transfer while Natal would remain at the Chelsea location."  Opp. at 17.[5]  Plaintiff contends that another MSBI employee, Nelli Knom ("Knom"), asked twice if she was dating a heterosexual married colleague.  *Id.* at 6, 18.  She claims that, on short notice, her supervisors directed her to return to work from vacation or else be disciplined.  *Id.* at 18.  Plaintiff further states that she was "consistently reprimanded and isolated, not allowed to use the breakroom, [and] told she was not allowed to go near Natal's work space or clock in to work [at] a particular clock nearby Natal."  *Id.* at 18.  Accordingly, Plaintiff's allegations fall into four general categories: (1) employee comments; (2) workload; (3) working arrangements and transfers; and (4) issues involving Plaintiff's quarantine pay and vacation.  The Court will consider these in turn.

First, the alleged comments by MSBI employees do not support an inference of sexual orientation discrimination.  Courts consider four factors in assessing whether a comment is

---

[5] In her brief in opposition, Plaintiff spells her colleague's name as "Denise Vaquez," but in her CSOF, she spells the name "Vasquez."  *Compare* Opp. at 17 *with* CSOF ¶ 10.  For purposes of this Opinion, the Court will refer to this colleague as Denise Vasquez.

probative of discrimination: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 768-69 (E.D.N.Y. 2018) (quoting *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)).

Here, Plaintiff testified that Yadgarov "was told that Tom Spina, from the Department of Labor Relations, has had it with [her] complaints," and that Yadgarov subsequently relayed Spina's comment to Plaintiff.  McEvoy Decl., Ex. 1 at 90:4-18; *see* Opp. at 17.  However, Plaintiff has not explained when the comment from Spina to Yadgarov was made, nor when Yadgarov repeated it to Plaintiff.  She has not supplied particular facts about the context in which the comment was made.  Most importantly, Plaintiff has not presented facts showing that the remark relates to her sexual orientation, nor can the Court discern such a connection from the record.  For each of these reasons, Yadgarov's remark does not support an inference of sexual orientation discrimination.  *See, e.g.*, *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 332 (S.D.N.Y. 2020) (finding conduct could not support an inference of discrimination where the plaintiff did "not present[] evidence that it was based on her race, color, or sex").

Plaintiff's allegation that her co-worker, Knom, asked whether Plaintiff was "dating a heterosexual married colleague," similarly fails to raise an inference of discrimination.  Opp. at 18.  Plaintiff does not cite *any* evidence to substantiate this allegation in her brief, and the Court declines to consider it on that basis.  *See generally id.*  Even if the allegation was supported by evidence and considered, Knom was a technician and not Plaintiff's supervisor or decision-maker.  *See* CSOF ¶ 10.  Plaintiff has not shown when Knom allegedly asked her

question.  Nor has Plaintiff presented facts showing that the question was invidious or derogatory toward her sexual orientation.  *See, e.g.*, *Senese.*, 330 F. Supp. 3d at 768 (finding remarks insufficient where they were "only tangentially related to gender" and there was no evidence that they related to an adverse action by a decision-maker against the plaintiff).

Any potentially discriminatory inference from Yadgarov's and Knom's remarks is further undermined by the undisputed fact that "[n]o one at MSBI . . . made comments to [Plaintiff] about her sexual orientation."  CSOF ¶ 14; *see, e.g.*, *Pang v. Cushman & Wakefield*, No. 20-cv-10019 (VEC) (SN), 2022 WL 19410316, at *7 (S.D.N.Y. Aug. 23, 2022) (finding no reasonable basis to infer discriminatory intent where, "as [the p]laintiff acknowledge[d], there [wa]s no evidence that anyone at [the defendant company] – let alone a decisionmaker involved in the alleged adverse employment actions – made any invidious or derogatory comment about anyone's race, national origin, or sex") (collecting cases).  In sum, the comments by other MSBI employees provide no basis to infer discriminatory intent.

Second, Plaintiff's allegations about her workload do not raise an inference of discrimination.  She claims that Yadgarov "overschedule[d] her up to seven patients in one shift, prevent[ed] her from taking lunch breaks, [and] routinely require[d] her to work beyond the end of her shift."  Opp. at 17.  But Plaintiff concedes that all technologists had the *same* volume of patients, and that it was *usual* for a PET/CT technologist to see five patients in a day.  CSOF ¶¶ 38, 44.  These facts suggest Plaintiff's workload was not materially different from other technologists.  *See id.*  Even if her workload was different, Plaintiff has not presented facts showing a connection between her workload and her sexual orientation.  *See, e.g.*, *Smith*, 440 F. Supp. 3d at 332 (finding conduct did not support inference of discrimination where it was not based on the plaintiff's protected status).

17

Plaintiff's allegation that Yadgarov "delegated more administrative tasks [to her] than [to] other heterosexual PET/CT Technologists (Todd Dixon and Denise Va[s]quez)" similarly fails.  Opp. at 17.  The evidence Plaintiff cites does not mention Todd Dixon or Denise Vasquez, nor do the parties' Rule 56.1 statements support this particular allegation.  *See generally id.*; CSOF.  Mere speculation, without identifiable supporting facts, is insufficient on summary judgment.  *See Cargian v. Breitling USA, Inc.*, No. 15-cv-01084 (GBD), 2021 WL 4780327, at *11 (S.D.N.Y. Sept. 13, 2021) (finding no *prima facie* case because the plaintiff failed to support her allegations of discriminatory intent with sufficient evidence).  Plaintiff also has not shown that she was "similarly situated" to Todd Dixon and Denise Vasquez, or that a material difference in responsibilities between the employees was based on their sexual orientation.  *See, e.g.*, *Spires v. MetLife Grp., Inc.*, No. 18-cv-04464 (RA), 2021 WL 3544719, at *5 (S.D.N.Y. Aug. 10, 2021) (rejecting comparison to other employees because the plaintiff failed to show they were "similarly situated," meaning "comparable 'education, seniority, performance, and specific work duties'" (internal citation omitted)), *aff'd*, No. 21-2014, 2023 WL 545350 (2d Cir. Jan. 27, 2023).

Third, allegations about Plaintiff's working arrangements and transfer do not support an inference of discrimination.  Plaintiff contends that Yadgarov "threatened [her] with a Queens transfer while Natal would remain at the Chelsea location."  Opp. at 17.  But the evidence Plaintiff cites does not support this allegation.  *See id.*  Instead, the undisputed evidence indicates that Plaintiff was never transferred to Queens, Plaintiff was *temporarily* relocated to the Chelsea location, and Natal (a heterosexual) was temporarily relocated at the same time as Plaintiff.  *See* CSOF ¶¶ 85-87; *see, e.g.*, *Smith*, 440 F. Supp. at 330 (finding transfer could not support a *prima facie* case because it was temporary and another technologist outside of the plaintiff's protected

status was also transferred).  Indeed, the evidence Plaintiff cites shows that Plaintiff's temporary

relocation was necessary to allow MSBI personnel to "talk to staff and conduct an investigation"

of Plaintiff and Natal's complaints of each other, and that Plaintiff was given "a choice" about

where she would be temporarily relocated.  McEvoy Decl., Ex. 4 at 26:18-27:10; CSOF ¶ 86.

Without more, the fact that Plaintiff felt "threatened" is insufficient, because "even if sincerely

held, a plaintiff's 'feelings and perceptions of being discriminated against' do not provide a basis

on which a reasonable jury can ground a verdict."  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d

59, 75 (2d Cir. 2015) (affirming summary judgment for the employer because the plaintiff failed

to raise an inference of discrimination).  Similarly, Plaintiff's allegation that she was

"consistently reprimanded and isolated, not allowed to use the breakroom, [and] told she was not

allowed to go near Natal's work space or clock in to work [at] a particular clock nearby Natal"

similarly fails.  Opp. at 18.  Plaintiff cites *no* evidence for this conduct.  *See id.*  Even if true,

these allegations would not support an inference of discrimination on the basis of her sexual

orientation.

Fourth, the circumstances surrounding Plaintiff's quarantine pay and termination do not

raise an inference of discrimination.  *See* Opp. at 17-18.  Although Plaintiff may be frustrated

with the handling of her paid time off in 2021, including the use of her quarantine and vacation

days, the Court's role "is not to evaluate the wisdom of personnel decisions, but merely to

determine whether the decisions were rational and non-discriminatory."  *Smith*, 440 F. Supp. 3d

at 332 (quoting *Krinsky v. Abrams*, No. 01-cv-05052 (SLT), 2007 WL 1541369, at *8 (E.D.N.Y.

May 25, 2007), *aff'd*, 305 F. App'x 784 (2d Cir. 2009)).  Even if Defendants coded Plaintiff's

vacation and quarantine pay incorrectly, failed to timely rectify the coding issue, or failed to

proactively inform Plaintiff that she lacked sufficient vacation hours, Plaintiff has not presented any evidence linking these issues with her sexual orientation.

In sum, whether viewed individually or collectively, the record evidence does not raise an inference that Defendants intended to discriminate against Plaintiff on the basis of her sexual orientation. *See, e.g.*, *Ya-Chen Chen*, 805 F.3d at 75 (affirming summary judgment for the defendant employer "[g]iven the absence of evidence giving rise to an inference of discrimination"); *Vitale v. Equinox Holdings, Inc.*, No. 17-cv-01810 (JGK), 2019 WL 2024504, at *8 (S.D.N.Y. May 7, 2019) (granting summary judgment for the employer, where the plaintiff did not show "discrimination played any part in the adverse employment action," and therefore could not establish a *prima facie* case under Title VII).

Because Plaintiff has not shown that discrimination based on sexual orientation played a part in any adverse action taken against her, she has failed to make out a *prima facie* case of discrimination under Title VII or raise a triable issue of fact.  Plaintiff's Title VII discrimination claim is therefore dismissed.[6]

---

[6] Plaintiff references other conduct in her Rule 56.1 counterstatement, including that Mrnaci "prohibited Plaintiff from being along [sic] in any rooms during her shift with another female colleague. . . but MSBI management did not direct heterosexual couple Todd Dixon and Denise Vasquez they could not be alone together in a room."  CSOF ¶ 10; *see also id.* ¶ 22.  However, "because Plaintiff does not raise [an argument based on this information] in her briefing in opposition to summary judgment, the Court deems it waived."  *Kaye*, 2023 WL 2745556, at *17 n.22 (declining to consider a particular basis for disparate treatment that was not raised in the plaintiff's opposition brief); *see Ohr Somayach/Joseph Tanenbaum Educ. Ctr.*, 483 F. Supp. 3d at 206 n.6.  Even if considered and substantiated by evidence in the record, such conduct consists of no more than sporadic workplace incidents and would not give rise to an inference of discriminatory intent.

### iii.   Legitimate, Non-Discriminatory Justification

Even if Plaintiff had established a *prima facie* case, her discrimination claim still fails because Defendants have produced a legitimate, non-discriminatory reason for their termination decision, and Plaintiff has failed to show that reason was pretext for discrimination.

Defendants have produced evidence that they terminated Plaintiff's employment because she failed to report to work on March 29, 2021.  It is undisputed that, on March 24, 2021, Defendants informed Plaintiff that she had only 15 hours of vacation time remaining, and she would therefore have to return from her vacation by March 29 or else face disciplinary action. CSOF ¶ 69.  Plaintiff nonetheless proceeded with her vacation and did not return to work on March 29 as directed.  *Id.* ¶ 70.  When Plaintiff failed to report to work, Defendants terminated her employment.  *Id.*  In their termination letter, Defendants stated that Plaintiff was "terminated effective immediately for job abandonment" because her "failure to return is in violation of policy."  Clancy Decl., Ex. 11 at Bates No. PLF000053.  In its notice of termination to Plaintiff's union representative, MSBI similarly stated that Plaintiff had been fired "for poor conduct/failure to return to work" on March 29.  *Id.* at Bates No. PLF000052.

Defendants have therefore satisfied their burden of producing a legitimate, non-discriminatory reason for their action.  *See, e.g.*, *Herrnson v. Hoffman*, No. 19-cv-07110 (JPO), 2023 WL 2647603, at *4 (S.D.N.Y. Mar. 27, 2023) (finding that the plaintiff's "failure to report for work became a legitimate, non-discriminatory reason to terminate" his employment); *Vincent v. N.Y.C. Transit Auth.*, No. 17-cv-00068 (RRM) (RML), 2021 WL 1210368, at *9 (E.D.N.Y. Mar. 30, 2021) (finding job abandonment a legitimate reason for terminating the plaintiff's employment).

Because Defendants have met their burden, Plaintiff must show "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (quoting *Van Zant*, 80 F.3d at 714) (internal alterations adopted).  Plaintiff has not done so here.

Plaintiff argues that Defendants' justification is pretextual because their "quarantine pay policies" were "ambiguous," and as of February 2021, Plaintiff had sufficient vacation hours remaining for her planned vacation in March.  Opp. at 18-19.  Even if true, Plaintiff's allegations fall far short of showing that Defendants' explanation was pretext for discrimination.  Plaintiff has failed to rebut the evidence that she did not have sufficient vacation hours remaining at the time of her vacation.  *See* CSOF ¶ 68.  She has not rebutted the evidence that Defendants told her she lacked sufficient vacation hours, that she would be disciplined if she failed to return to work on March 29, or that she in fact failed to report to work on March 29.  *See id.* ¶¶ 69-70; Clancy Decl., Ex. 11 at Bates Nos. PLF000052-53.  Nor has Plaintiff put forth any evidence showing that the employment decision was motivated, even in part, by animus toward her sexual orientation.  *See supra* Discussion § I(A)(ii); *see, e.g.*, *Philpott v. State Univ. of N.Y.*, 805 F. App'x 32, 34 (2d Cir. 2020) (affirming summary judgment for the employer because the plaintiff "failed to offer any other evidence rebutting the proffered reasons or suggesting that [the employer] was, in fact motivated by [sexual orientation] discrimination").

Accordingly, Plaintiff has failed to present sufficient evidence to show that Defendants' justification for her employment termination was pretextual.  *See, e.g.*, *Herrnson*, 2023 WL 2647603, at *4 ("Thus, while Hoffman Management may not have had a stated policy regarding job abandonment, Plaintiff has not put forth evidence that would support a conclusion that

Hoffman's justification was pretextual."); *Vincent*, 2021 WL 1210368, at *9 (granting summary judgment to the employer because the evidence showed that the plaintiff was "terminated for abandoning her job," and the plaintiff failed to presented "evidence to the contrary"); *Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 147 (S.D.N.Y. 2021) (granting summary judgment to the defendants because the plaintiff failed to produce evidence sufficient to support sexual orientation-based discrimination claims); *Cargian*, 2021 WL 4780327, at *11 (granting defendant summary judgment because the "[p]laintiff's speculation that he suffered sexual orientation discrimination, absent any supporting facts, is insufficient to allow a reasonable juror to conclude that [the d]efendant's true reason for [the p]laintiff's adverse employment action is discrimination").

Because Plaintiff has failed to establish a *prima facie* case or rebut Defendants' justification, Defendants are entitled to summary judgment on Plaintiff's discrimination claim under Title VII.

### B.  NYSHRL and NYCHRL Claims

The NYCHRL and post-amendment NYSHRL are less demanding of plaintiffs than Title VII for discrimination claims.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *de Souza v. Planned Parenthood Fed'n of Am., Inc.*, No. 21-cv-05553 (LGS), 2023 WL 2691458, at *11 (S.D.N.Y. Mar. 29, 2023).[7]  To establish a *prima facie* claim

---

[7] New York amended the NYSHRL in 2019 to render the standard for claims under that statute "closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).  This amendment applies to claims that accrued after October 11, 2019 but does not apply retroactively.  *See id.*  Here, Plaintiff alleges that conduct occurred both before and after this date.  *See generally* Compl.  However, the parties have not briefed whether the amendment to the NYSHRL applies, and Plaintiff has cited pre-2019 case law for the higher, pre-amendment NYSHRL standard.  *See* Opp. at 15-16.  Out of an abundance of caution, the Court will apply the lower NYCHRL standard to Plaintiff's NYSHRL discrimination, hostile work environment, and retaliation claims for purposes of this Opinion.  *See also Syeed v.*

for discrimination under these statutes, a plaintiff must at least "show differential treatment – that she was treated 'less well' – because of a discriminatory intent." *Mihalik*, 715 F.3d at 110.  In response, "[t]he employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination," and the employer is entitled to summary judgment if "the record establishes as a matter of law that 'discrimination play[ed] *no* role' in its actions." *Id.* at 110 n.8 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 37-39 (1st Dep't 2009)).  As with Title VII, however, neither the NYSHRL nor NYCHRL is "'a general civility code,' and where a plaintiff fails to demonstrate that the defendant's conduct was caused 'at least in part by discriminatory or retaliatory motive,' or the defendant demonstrates that the alleged conduct did not exceed 'petty slights or trivial inconveniences,' plaintiff's claim must fail." *Livingston*, 563 F. Supp. 3d at 234 (quoting *Ramirez v. Michael Cetta Inc.*, No. 19-cv-00986 (VEC), 2020 WL 5819551, at *18 (S.D.N.Y. Sept. 30, 2020)).

Plaintiff's NYCHRL and NYSHRL discrimination claims fail for the same reasons as her Title VII discrimination claim.  Plaintiff does not analyze her NYCHRL and NYSHRL claims separately, and at most, she relies on the same categories of allegedly discriminatory treatment as with her Title VII claim.  *See* Opp. at 17-20; *supra* Discussion § I(A).  However, Plaintiff has not presented evidence that she was treated "less well" because of discriminatory animus.  *Mihalik*, 715 F.3d at 110.  Further, Defendants have shown that Plaintiff's failure to return to work was a

---

*Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (concluding that "the amended NYSHRL adopts the same standard as the NYCHRL"); *de Souza*, 2023 WL 2691458, at *11 ("Because all of Plaintiff's NYSHRL claims accrued in or after October 2019, they 'rise and fall with her NYCHRL claims.'" (quoting *Syeed*, 568 F. Supp. 3d at 321)); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256 (GHW), 2023 WL 2049800, at *25 (S.D.N.Y. Feb. 16, 2023) ("The NYCHRL is a 'one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall." (quoting *Mihalik*, 715 F.3d at 109)).

legitimate, non-discriminatory reason for their conduct, and Plaintiff has not rebutted that

showing with evidence that discrimination played any part in Defendants' behavior.  *See id.*

Even under the most lenient standard of the NYCHRL, Plaintiff "may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome [Defendants'] motion for

summary judgment."  *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 123 (S.D.N.Y.

2020) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)).

Accordingly, the Court grants Defendants summary judgment on Plaintiff's NYCHRL

and NYSHRL discrimination claims.  *See, e.g.*, *Owens v. City of N.Y. Dep't of Educ.*, No. 21-

2875, 2022 WL 17844279, at *3 (2d Cir. Dec. 22, 2022) (affirming summary judgment for the

employer on Title VII, NYSHRL, and NYCHRL discrimination claims because no reasonable

juror could conclude that the defendant's action was motivated by discrimination).

## II.    Hostile Work Environment

### A.  Title VII Claim

To prevail on a hostile work environment claim under Title VII, a plaintiff must "prove

conduct (1) that is objectively severe or pervasive, that is, conduct that creates an environment

that a reasonable person would find hostile or abusive, (2) that the plaintiff subjectively

perceives as hostile or abusive, and (3) that creates such an environment because of plaintiff's

membership in a protected class."  *Tassy v. Buttigieg*, 51 F.4th 521, 533 (2d Cir. 2022) (quoting

*Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (internal alternations adopted).  Thus, "a

plaintiff must produce enough evidence to show that 'the workplace is permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment.'"  *Rivera*

*v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (quoting *Gorzynski v.*

*JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)).  This standard has both objective and subjective elements: "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

To determine whether conduct is sufficiently "hostile" or "abusive," courts consider the "totality of the circumstances." *Id.* (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).  Factors include: "[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with the victim's [job] performance." *Id.* (quoting *Hayut*, 352 F.3d at 745).  Incidents that are isolated usually will not suffice to establish a hostile work environment.  *See Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012).  The Second Circuit has emphasized that, "'mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable under Title VII only when it occurs because of an employee's *protected characteristic*,'" such as sexual orientation.  *Rivera*, 743 F.3d at 20 (quoting *Brown*, 257 F.3d at 252) (internal alterations adopted).

Plaintiff's hostile work environment claim fails for several reasons.  First, Plaintiff's argument with respect to this claim is one paragraph long and does not cite any record evidence. *See* Opp. at 20-21.  She does not apply the summary judgment standard or attempt to identify any triable issue of fact; instead, she merely asserts that she has "sufficiently *pled* a hostile work environment" claim.  *Id.* at 20 (emphasis added).  The cursory and unsubstantiated nature of Plaintiff's argument is alone grounds to reject it.  *See Rodriguez*, 412 F. Supp. 3d at 432 n.17

(declining to "consider cursory arguments"); *Allstate Vehicle & Prop. Ins. Co.*, 533 F. Supp. 3d at 82 (same).

Second, even if considered, Plaintiff's hostile work environment claim is not supported by the record. Plaintiff principally points to Natal's conduct as creating a hostile environment. *See* Opp. at 20-21. She argues that, over the course of several years, Natal "bullied" her and became "physical with Plaintiff on two occasions while at work." *Id.* Plaintiff further argues that she complained about this conduct to Yadgarov, who declined to take action because "he fe[lt] [Natal's conduct] was not intentional." *Id.* Even assuming Natal engaged in the alleged conduct, it was not severe or pervasive and instead amounted to no more than petty slights and trivial inconveniences. Such conduct does not make a work environment hostile for purposes of Title VII. *See, e.g.*, *Williams v. Geiger*, 447 F. Supp. 3d 68, 81 (S.D.N.Y. 2020) (granting summary judgment to the employer because the hostile work environment complained of consisted of "'run-of-the-mill workplace conflicts' that 'do not rise to the level of an objectively hostile workplace'" (quoting *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019)) (internal alterations adopted)); *Hsueh v. N.Y. State Dep't of Fin. Servs.*, No. 15-cv-03401 (PAC), 2017 WL 3671179, at *5-6 (S.D.N.Y. Aug. 24, 2017) (granting the employer summary judgement because a coworker's arm grabbing, bumping into, and standing close to the plaintiff did not amount to a hostile work environment); *Thelwell v. City of New York*, No. 13-cv-01260 (JGK), 2015 WL 4545881, at *11 (S.D.N.Y. July 28, 2015) (finding a co-worker's vocal criticisms, stereotyping, and isolated episodes of racial enmity insufficient on summary judgment), *aff'd*, 733 F. App'x 561 (2d Cir. 2018).

Third, even if a reasonable juror could conclude that the alleged conduct was sufficiently severe or pervasive, Plaintiff has presented no evidence that the conduct was, even in part, based

on her sexual orientation.  Taken in the light most favorable to Plaintiff, the evidence at most indicates that Natal or others at MSBI had a personal animus against Plaintiff.  But such personal animus, not based on Plaintiff's protected status, fails to make out a hostile work environment claim.  *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (holding that a plaintiff asserting a hostile work environment must link the hostile conduct to her protected status); *Rivera*, 743 F.3d at 20 (emphasizing that "mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . *protected characteristic*" (quoting *Brown*, 257 F.3d at 252)); *see, e.g.*, *Williams*, 447 F. Supp.3d at 86 (granting the defendant summary judgment because the plaintiff failed to present any evidence showing that her protected status was the basis for the allegedly hostile work environment); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-cv-01459 (JMF), 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (dismissing hostile work environment claim on summary judgment because, at most, "the evidence might suggest that [her coworker] was indeed hostile to her, but that . . . such hostility was due to personal animus"); *Hsueh*, 2017 WL 3671179, at *5-6 (granting summary judgment to the employer where the plaintiff did not show that her co-worker "made any derogatory or overtly sexual comments during his verbal interactions with her").

For all of these reasons, Plaintiff has failed to put forth sufficient evidence of a hostile work environment under Title VII, and Defendants are entitled to summary judgment.

### B.  NYSHRL and NYCHRL Claims

For hostile work environment claims under the NYCHRL and post-amendment NYSHRL, a plaintiff must, at least, show that she was subjected to "unequal treatment based upon membership in a protected class."  *Livingston*, 563 F. Supp. 3d at 252, 255 (quoting *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012)).  For the

reasons addressed above, however, Plaintiff has failed to adduce evidence that Defendants' conduct was motivated by "discriminatory animus" on the basis of her sexual orientation, and her NYCHRL and NYSHRL hostile work environment claims fail on that ground. *See, e.g.*, *id.* at 255-56 (granting summary judgment for the employer on a NYCHRL hostile work environment claim because there was "no triable issue of fact as to whether [the d]efendants' behavior 'was motivated by discriminatory animus'" (quoting *Pena-Barrero v. City of New York*, No. 14-cv-09550 (VEC), 2017 WL 1194477, at *17 (S.D.N.Y. Mar. 30, 2017), *aff'd*, 726 F. App'x 31 (2d Cir. 2018))); *Dressler v. N.Y.C. Dep't of Educ.*, No. 10-cv-03769 (JPO), 2012 WL 1038600, at *14-15 (S.D.N.Y. Mar. 29, 2012) (granting summary judgment on a NYCHRL hostile work environment claim because the plaintiff "fail[ed] to adduce any evidence of discriminatory intent in the unpleasant conduct alleged").

Even if Plaintiff had presented evidence of discriminatory animus, her claims would still fail because the record evidence demonstrates no more than "petty slights" and "trivial inconveniences." *Livingston*, 563 F. Supp. 3d at 255; *see, e.g.*, *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (granting summary judgment on a NYCHRL hostile work environment claim because, although the defendants may have been "overbearing or obnoxious," those actions did "not rise above the level of petty slights and trivial inconveniences" (quoting *Mihalik*, 715 F.3d at 110-11)).

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's NYCHRL and NYSHRL hostile work environment claims.

### III.    Retaliation

####     A.  Title VII Claim

Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  As in the discrimination context, the *McDonnell Douglas* burden-shifting framework applies to claims for retaliation.  *See Carr*, 76 F.4th at 178.  "[T]o establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions.  *Id.* at 180.  A "materially adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 179 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  If the plaintiff demonstrates a *prima facie* case of retaliation, the burden of production shifts to the defendant to provide "a legitimate, non-retaliatory reason for the allegedly retaliatory action."  *Id.* at 178.  If the defendant does so, "the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action."  *Id.* (quoting *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)).

Plaintiff's retaliation claim fails because she has presented insufficient evidence that she engaged in a protected activity.  Although Plaintiff lodged several complaints at MSBI, she never complained about sexual orientation discrimination.  Instead, she generally complained about

Natal's behavior and her workload.  *See supra* Discussion § I(A).  "Mere complaints of unfair treatment," however, "'are not protected speech' in the employment retaliation context, and the 'onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally.'"  *Benzinger*, 447 F. Supp. 3d at 124 (quoting *Brantman v. Fortistar Capital, Inc.*, No. 15-cv-04774 (NSR), 2017 WL 3172864, at *7 (S.D.N.Y. July 22, 2017)); *see Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016) ("[A]bsent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity.").  Based on the record evidence, no reasonable juror could conclude that Plaintiff complained about unfair treatment on the basis of her sexual orientation.

Plaintiff's hostile work environment claim fails on the additional ground that she has not shown a "causal connection between the protected activity and the materially adverse action or actions."  *Carr*, 76 F.4th at 180; *see, e.g.*, *Benzinger*, 447 F. Supp. 3d at 128 ("Thus, no reasonable juror could find that [the defendant] subjected [the plaintiff] to a materially adverse employment action or that there was a causal connection between any protected activity – of which there was none known to [the defendant] – and such an action.").

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Title VII retaliation claim.

### B.  NYSHRL and NYCHRL Claims

For retaliation claims under the NYCHRL and post-amendment NYSHRL, a plaintiff must at least demonstrate that she "took an action opposing [her] discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Livingston*, 563 F. Supp. 3d at 246 (quoting *Mihalik*, 715 F.3d at 112).

Even under this "less demanding standard," the plaintiff must establish a "causal link" – "that there was a causal connection between [her] protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for [her] termination was pretextual or motivated at least in part by an impermissible motive." *Id.* at 246, 250 (quoting *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018)).

Plaintiff's NYCHRL and NYSHRL claims fail on several grounds. As addressed above, Plaintiff has not shown that she "took an action opposing her discrimination" on the basis of sexual orientation. *Mihalik*, 715 F.3d at 112; *see supra* Discussion § III(A). Plaintiff also has not demonstrated that Defendants engaged in conduct that a juror could reasonably conclude would be likely to deter a person from engaging in such action. *See supra* Discussion § III(A). Nor has Plaintiff established a causal connection between her alleged protected activity and Defendants' conduct. *See id.*; *see, e.g.*, *Livingston*, 563 F. Supp. 3d at 250-51 (granting summary judgment to the employer because the plaintiff was "unable to demonstrate any 'causal link'" for his Title VII, NYCHRL, and NYSHRL retaliation claims); *Mazur v. N.Y.C. Dep't of Educ.*, 621 F. App'x 88, 90 (2d Cir. 2015) (affirming summary judgment for the defendants because the plaintiff failed to establish "the requisite causal link between [her] complaints and any alleged retaliatory action," and the record also contained "non-retaliatory reasons for any action taken").

For these reasons, the Court grants summary judgment to Defendants on Plaintiff's NYCHRL and NYSHRL retaliation claims.

## VIII.   Remaining Claims

Plaintiff asserts claims under the NYCHRL for aiding, abetting, inciting, compelling and coercing forbidden acts (Count 10), and retaliation under the NYLL (Count 11). *See* Compl. ¶¶ 188-197. Although Defendants moved for summary judgment on these claims, Plaintiff did

not address them in her opposition.  *See* Br. at 1-2, 18 (seeking summary judgment on Counts 10 and 11); Reply at 10; *see generally* Opp.  The Court finds that Plaintiff has abandoned these claims, and therefore grants summary judgment for Defendants on Counts 10 and 11.  *See, e.g.*, *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 470 n.2 (S.D.N.Y. 2021) (granting summary judgment to the defendant because the plaintiff did not address the NYLL claim in opposition); *Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-cv-06278 (VEC), 2018 WL 4625768, at *4 n.4 (S.D.N.Y. Sept. 26, 2018) (granting summary judgment to the defendants because the plaintiff "abandoned her aiding and abetting claim brought pursuant to the NYCHRL").

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in its entirety, and all counts are DISMISSED.  The Clerk of Court is respectfully directed to terminate all pending motions and to CLOSE the case.

Dated: September 14, 2023
New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge